**No. 26-____**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

In re LUIS SOTO, in his official capacity as Director/Warden of Delaney Hall Detention Facility; ARTHUR J. WILSON, JR., in his official capacity as Field Office Director, New Jersey Field Office, U.S. Immigration & Customs Enforcement; TODD BLANCHE, in his official capacity as Acting Attorney General, U.S. Department of Justice, MARKWAYNE MULLIN, in his official capacity as Acting Secretary, U.S. Department of Homeland Security; and TODD M. LYONS, in his official capacity as Acting Director, U.S. Immigration & Customs Enforcement,

Petitioners.

---

# PETITION FOR A WRIT OF MANDAMUS
# TO THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

---

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

CHARLES E.T. ROBERTS
ELIZABETH HEDGES
SEAN SKEDZIELEWSKI
Counsel to the Assistant
   Attorney General

AUGUST E. FLENTJE
Special Counsel for Immigration
   Litigation

ROBERT FRAZER
United States Attorney

MARK E. COYNE
Supervisory Assistant U.S. Attorney
Chief, Appeals Division

BENJAMIN MARK MOSS
Acting Senior Counsel for
   District Court Litigation
Office of Immigration Litigation

ALANNA T. DUONG
Senior Litigation Counsel

Counsel for Petitioners

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY .............................................................. 1

STATEMENT.................................................................................... 7

ARGUMENT....................................................................................15

    I.    The district court violated the party-presentation principle by injecting conditions claims into the case............. 18

    II.    Even if properly presented, the conditions claims are moot because Morales has been transferred to a different facility, ending his interest in challenging Delaney Hall conditions. ............................................................................ 25

    III.    Conditions-of-confinement claims may generally not be raised in habeas, which is the only relief sought here. .............30

    IV.    Mandamus is otherwise appropriate. ......................................32

CONCLUSION................................................................................. 35

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

## TABLE OF AUTHORITIES

**Cases**

*Allen v. McCurry*,
449 U.S. 90 (1980) .................................................................. 31

*Allied Chemical Corp. v. Daiflon, Inc.*,
449 U.S. 33 (1980).................................................................33

*Alvarez v. Smith*,
558 U.S. 87 (2009) ................................................................ 27

*Arizonans for Off. Eng. v. Arizona*,
520 U.S. 43 (1997) ................................................................ 25

*Artway v. Att'y Gen. N.J.*,
81 F.3d 1235 (3d Cir. 1996)................................................ 25, 26

*Bonadonna v. United States*,
446 F. App'x 407 (3d Cir. 2011) ........................................... 31

*Broadrick v. Oklahoma*,
413 U.S. 601 (1973) ..............................................................23

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004) ..................................................... 15, 17, 23

*Chicago Headline Club v. Noem*,
168 F.4th 1033 (7th Cir. 2026) ............................................33

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ................................................................ 27

*Clark v. Sweeney*,
607 U.S. 7 (2025).........................................................5, 18, 22

*CoreCivic, Inc. v. Governor of New Jersey*,
145 F.4th 315 (3d Cir. 2025) ................................................24

ii

*Flast v. Cohen,*
    392 U.S. 83 (1968) .................................................................... 25

*Folk v. Warden Schuylkill FCI,*
    No. 23-1935, 2023 WL 5426740 (3d Cir. Aug. 23, 2023) ................. 29, 31

*Gillette v. Prosper,*
    858 F.3d 833 (3d Cir. 2017) ........................................................15

*Hartnett v. Penn. State. Ed. Ass'n,*
    963 F.3d 301 (3d Cir. 2020) ........................................................28

*Hope v. Warden York Cnty. Prison,*
    972 F.3d 310 (3d Cir. 2020) ........................................................ 6, 7, 32

*In re Dep't of Com.,*
    586 U.S. 1018 (2018) ...................................................................3

*In re United States,*
    583 U.S. 29 (2017) ........................................................................3

*Leamer v. Fauver,*
    288 F.3d 532 (3d Cir. 2002) ........................................................27, 31

*Leslie v. Att'y Gen. of the U.S.,*
    363 F. App'x 955 (3d Cir. 2010) ....................................................6, 31

*Lomax v. Ortiz-Marquez,*
    140 S. Ct. 1721 (2020) .................................................................. 19

*Maness v. Meyers,*
    419 U.S. 449 (1975) ....................................................................33

*Margolin v. Nat'l Ass'n of Immigr. Judges,*
    608 U.S. ____, 2026 WL 1463466 (May 26, 2026) ........................... 18, 22

*McCarthy v. Bronson,*
    500 U.S. 136 (1991) .................................................................... 31

*Munaf v. Geren,*
    553 U.S. 674 (2008) ....................................................................30

*Nunes v. Decker,*
480 F. App'x 173 (3d Cir. 2012) ................................................................26

*Powell v. McCormack,*
395 U.S. 486 (1969) .................................................................................25

*Preiser v. Rodriguez,*
411 U.S. 475 (1973) ................................................................................. 31

*Rendell v. Rumsfeld,*
484 F.3d 236 (3d Cir. 2007) ............................................................. 26, 27

*Riley v. INS,*
310 F.3d 1253 (10th Cir. 2002) ..............................................................26

*Spencer v. Kemna,*
523 U.S. 1 (1998)......................................................................................26

*Steel Co. v. Citizens for a Better Env't,*
523 U.S. 83 (1998) ....................................................................................2

*Sutton v. Rasheed,*
323 F.3d 236 (3d Cir. 2003) .............................................................. 26, 29

*Trump v. Mazars USA, LLP,*
591 U.S. 848 (2020) .................................................................................23

*U.S. Doge Serv. v. Citizens for Resp. & Ethics in Washington,*
145 S. Ct. 1981 (2025) .........................................................................3, 34

*U.S. Parole Comm'n v. Geraghty,*
445 U.S. 388 (1980)..................................................................................25

*United States v. Burke,*
504 U.S. 229 (1992) ................................................................................. 18

*United States v. Santtini,*
963 F.2d 585 (3d Cir. 1992).........................................................16, 24, 32

*United States v. Sineneng-Smith,*
590 U.S. 371 (2020)..........................................................................1, 2, 23

iv

*Washington v. The GEO Group, Inc.*,
   No. 2:26-cv-06466 (D. NJ June 2, 2026) ............................................. 15, 28

*Washington v. The GEO Group, Inc.*,
   Docket No. ESX-C-131-26 (N.J. Super. Ct., Ch. Div. June 2, 2026)... 10, 22

*Weinstein v. Bradford*,
   423 U.S. 147 ....................................................................................... 27

**Statutes**

28 U.S.C. § 1651 ......................................................................................... 7

28 U.S.C. § 2241(c)(3) .............................................................................. 30

## INTRODUCTION AND SUMMARY

This petition arises from extraordinary acts of judicial activism that portend a circus if not halted by this Court. Seizing upon headlines about the Delaney Hall facility, the district court has twisted this case beyond recognition in service of conducting an inquiry of its own devising, which has transgressed one bedrock limitation on judicial review after another. Mandamus relief is warranted to halt this judicial usurpation.

The underlying action is a habeas case seeking *release* from immigration detention. At least that is what it is supposed to be about—and all that the habeas petition pleads. But, apparently unsatisfied with the actual claims that the petitioner asserted, the district court decided to inject its own preferred set of claims into this action. Perhaps reacting to the conditions at Delaney Hall recently becoming a cause célèbre—and explicitly citing "national news coverage" as a basis for its freewheeling inquiry, A23 n.1—the district court set out to transmute this case about *individual detention* into a sweeping inquiry into *conditions of confinement*.

This transformation violates bedrock principles of judicial review. As the Supreme Court has unanimously held, courts "rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 590 U.S.

371, 375 (2020). Courts "do not, or should not, sally forth each day looking for wrongs to right." *Id.* at 376. The Supreme Court has summarily reversed Circuit Courts for violating this principle twice in the past seven months.

But that is precisely what the district court is doing here—conducting its own personal inquiry into conditions at Delaney Hall that have practically no bearing on the issues originally presented. And they have *even less* bearing now: the petitioner has been transferred to another facility and is no longer even at Delaney Hall. The conditions there thus no longer have any relevance to petitioner or this *habeas petition* at all. The petitioner's unpled conditions claims are thus moot (to the extent they ever existed at all). Jurisdiction over conditions has accordingly "cease[d] to exist, [and] the only function remaining to the court is that of announcing the fact and dismissing" that theory. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citation omitted).

But just as the district court refused to limit itself to Petitioner's actual claims, it has likewise refused to adhere to the bedrock limitations of Article III. Instead, it has denied two separate requests to cancel a hastily scheduled evidentiary hearing—which will go forward Monday, June 8, at 2:00 p.m. absent this Court's intervention—and a request to stay the hearing pending the outcome of this petition. And while the district court ordered Petitioners

(the U.S. government respondents below, and hereinafter the government) to bring witnesses to the hearing, it placed no parameters on the scope of the inquiry, which risks becoming a free-ranging inquisition into personnel, sensitive law-enforcement information, security procedures, medical care provided to detainees other than the habeas petitioner here, and potentially privileged information regarding executive decision making and law-enforcement strategy.[1]

This type of judicial overreach should not go unchecked. As the Supreme Court emphasized just last year when staying sweeping and legally irrelevant discovery, "separation of powers concerns counsel judicial deference and restraint in the context of discovery regarding internal Executive Branch communications." *U.S. Doge Serv. v. Citizens for Resp. & Ethics in Washington*, 145 S. Ct. 1981, 1981 (2025).[2] The order setting Monday's hearing raises the specter of inquiry into such Executive Branch

---

[1] Simultaneously with this petition, the government is filing a motion for a stay and for an immediate administrative stay. The government has included that motion as an attachment to this petition on the Court's electronic case filing system.

[2] *See also, e.g.*, *In re United States*, 583 U.S. 29, 30-31 (2017) (per curiam) (granting certiorari and vacating the court of appeals' judgment denying mandamus relief to halt discovery to supplement the administrative record); *In re Dep't of Com.*, 586 U.S. 1018 (2018) (granting certiorari to review district court's order requiring deposition of executive-branch official).

communications and more. In addition to seeking "testimony under oath from" the habeas petitioner (hereinafter Morales), the district court demanded testimony from "one or more individuals with personal knowledge with respect to the conditions at Delaney Hall" detention facility "and the policies and practices that have led to those conditions." A23. All this without a request in the habeas petition for a hearing with such testimony, a claim based on conditions of confinement as to which such testimony could possibly be relevant, or even a request for jurisdictional discovery from Morales had he asserted such a claim.

Being forced to proceed with this judicial spectacle on Monday will harm the government in ways that are not remediable through appeal. The government is even now pulling extremely scarce resources from law-enforcement responsibilities to prepare for the evidentiary hearing—scheduled with all of six calendar days' notice—which the district court has defined as inquiring into anything from the "conditions at Delaney Hall" to Executive Branch "policies and practices" leading "to those conditions." A23. Moreover, the risk posed even by *discovery* into Executive Branch communications in cases like *U.S. Doge Service* is amplified here, where the district court proposes to elicit *in open court* testimony on a range of subjects that frequently implicate law-enforcement privileges and highly sensitive

4

security information. A document or deposition transcript can be redacted or filed under seal; the hearing set for Monday cannot.

Most problematically, Monday's hearing has no legal basis whatsoever for three overarching reasons. *First*, it violates core party-presentation principles by purporting to inquire into a claim that Morales did not even make: a challenge to the conditions of confinement at Delaney Hall. That the district court is venturing off on its own is apparent from its having entered *two* show-cause orders on the same day: one ordering the government to justify Morales's detention in response to his request for release, A20, and a separate one stating that the district court also "interprets" the petition "to, at least in part," be making a claim about "arbitrary and capricious" detention "based on [detention] conditions" at Delaney Hall, A22. Based on its addition of a conditions-of-confinement claim to the case, the district court then *sua sponte* "f[ound] that an evidentiary hearing is required" on that claim. A23. That determination violated the fundamental party-presentation principle that the Supreme Court reiterated this Term: "[t]he parties frame the issues for decision, while the court serves as neutral arbiter of matters the parties present." *Clark v. Sweeney*, 607 U.S. 7, 9-10 (2025) (per curiam) (cleaned up).

*Second*, even if some broad reading of the habeas petition could interpret it as raising a conditions claim, that claim is now indisputably moot. The government transferred Morales from Delaney Hall to a different detention facility on Thursday. Despite being aware of this fact, the district court rejected the government's requests to cancel or at least stay the hearing. ECF 20 (text order); A55. And it expressly ruled that, "[a]bsent a stay by the Court of Appeals, the hearing on Monday will proceed as scheduled." A55. So a hearing that no one asked for, on a claim no party has pled, implicating substantial separation of powers concerns, is now set to go forward despite the resolution of any possible legal basis for it.

*Third*, *even if* the habeas petition purported to challenge conditions of confinement, and *even if* that challenge were not moot (as it is), the challenge would be improper because a habeas petition like the one here is not a proper vehicle. *See, e.g., Leslie v. Att'y Gen. of the U.S.*, 363 F. App'x 955, 958 (3d Cir. 2010). Challenges to conditions of confinement may be brought in habeas (if at all) only in "*extreme*" cases, *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 324 (3d Cir. 2020) (citation omitted), and the district court gave only the barest explanation of its conclusion for why this case is one. That explanation depended on the district court's consultation of extra-record materials of which it took "judicial notice," including a separate

6

litigation proceeding before a different federal judge regarding conditions at Delaney Hall. A23 n.1. That "judicial notice" does not satisfy the threshold jurisdictional pleading standard that *Hope* established. *See Hope*, 972 F.3d at 323-25. If it did, the narrow jurisdictional exception that *Hope* recognized during the height of the COVID-19 pandemic would swallow the rule that conditions claims are not cognizable in habeas.

Mandamus relief is warranted to halt these severe transgressions upon Article III jurisdictional requirements, party-presentation principles, and limitations on habeas claims. *See* 28 U.S.C. § 1651. Even if the district court (or this Court) has concerns about the conditions experienced by *other* detainees at Delaney Hall, those concerns can be addressed in proper Article III cases or controversies. There is no basis for a hearing to go forward Monday on conditions at a facility where Morales is no longer housed. And if it does go forward, the damage to government interests in protecting sensitive information may well be irreparable.

This Court should grant the petition for a writ of mandamus and order the district court to cancel Monday's hearing.

## STATEMENT

**1.** This matter began with a petition for a writ of habeas corpus and motion for temporary restraining order (TRO) filed by respondent here,

Freiman Xaviel Hamui Morales, on June 1, 2026. A1-A19; ECF 2. Morales alleged that he was being detained at Delaney Hall Detention Facility without a "meaningful individualized custody determination," and he sought release from custody, or, in the alternative, "a prompt individualized bond hearing." A3, A5, A17-A18. As grounds for relief, Morales asserted procedural and substantive Due Process claims under the Fifth Amendment. A15-A17. Although Morales's filings vaguely referenced general conditions at Delaney Hall in support of his arguments for why, under substantive and procedural due process principles, vindicating his interest in liberty required his release, A11, A13, A15, A17, he did not raise a conditions-of-confinement claim or a claim that his detention was arbitrary and capricious based on its conditions.

The same day that Morales filed his petition, the Chief Judge of the District of New Jersey enjoined the government "from transferring [Morales] from New Jersey pending further Order of the Court." ECF 3 (text order). Upon being assigned the case the following day (June 2), the district judge (Hon. Zahid N. Quraishi) then immediately entered an order requiring the government to "show cause within seven days why [the] Court should not order [Morales] released." A20. That order made Tuesday, June 9, the deadline for the government to address, among other things, Morales's criminal history, the authority under which he is detained, and the limits on

8

the district court's jurisdiction. The district court further ordered that the injunction against transferring Morales out of New Jersey "shall remain in place pending a final decision in this matter" and ordered that the government "inform the Court of any transfer of [Morales] out of Delaney Hall." A20-A21. And the district court ordered that, by 8:00 pm Eastern time that same day, "ICE shall file a declaration, signed under penalty of perjury . . . by either the Newark Field Office Director or by the Newark Field Office Deputy Director, that indicates that ICE has (i) received this Court's Order prohibiting [Morales's] transfer from New Jersey; and (ii) received written legal advice from the United States Attorney's Office on the subject of ICE's obligation to comply with that Order." A21.[3]

**2.** Also on June 2, the district court entered a second, separate order to show cause. Although Morales is represented by counsel and his filings did not contain a conditions-of-confinement claim or an arbitrary-and-capricious claim, the district court "interpret[ed] [Morales] to, at least in part, be arguing that his detention is arbitrary and capricious based on the[] conditions" at Delaney Hall. A22. The district court then acknowledged that (at most) a "claim based on conditions of confinement may only form a basis

---

[3] The Newark Deputy Field Office Director provided the required declaration on June 2. ECF 7.

for relief in a habeas proceeding in an *extreme case.*" A22 (emphasis added). Nonetheless—and despite Morales's not having made such a claim—the district court then stated that Morales had "alleged facts which [the district court] believe[d] place[] this matter in such a position." A22-A23. In support of interpreting Morales's petition so broadly, the district court took "judicial notice that the conditions of confinement at Delaney Hall have become a matter of national news coverage." A23 n.1. The district court then referenced (in addition to news stories) a lawsuit filed by the Commissioner of the New Jersey Department of Health seeking access to Delaney Hall for inspection purposes. *Id.* (citing *Washington v. The GEO Group, Inc.*, Docket No. ESX-C-131-26 (N.J. Super. Ct., Ch. Div. June 2, 2026)).

Addressing the conditions-of-confinement issue that it had read into the case, the district court then "f[ound] that the issue [could] not be resolved solely through certifications which do not permit credibility determinations" and "f[ound] that an evidentiary hearing [was] required to hear testimony under oath from [Morales] as well as one or more individuals with personal knowledge with respect to the conditions at Delaney Hall and the policies and practices that have led to those conditions." A23. Thus, the Court ordered "that the parties shall show cause in writing" why such a hearing "should not be conducted . . . on Monday[,] June 8, 2026 at 2:00 p.m." *Id.*

The district court did not give reasoning as to how (if at all) the hearing would aid in resolving Morales's request for release from custody. It ordered that the parties "file simultaneous briefs" prior to the hearing and that the government's brief "disclose the name(s) and title(s) of the witness(es) that will [be] testifying on their behalf at the hearing." A23 & n.3.

On June 3, Morales filed an amended habeas petition. A25-A43. As before, he raised procedural and substantive due process arguments and sought immediate release or a "prompt and constitutionally adequate individualized custody determination." A39-A41. He again did not raise a conditions-of-confinement claim.[4] Although Morales's original petition had claimed he had "no criminal history," A2, he now acknowledged "a prior Florida criminal case arising from a January 2026 traffic stop," A26. That case "involved charges relating to possession of cocaine, possession of

---

[4] In the amended petition as in the original petition, the only allegations touching on conditions were vague, general, and offered in support of Morales's arguments about his liberty interest in release. *See* A27 (alleging that "[c]onditions at Delaney Hall have been the subject of significant public scrutiny and concern" and that "[t]hese conditions have compounded the emotional and psychological burdens associated with Mr. Morales's detention"), A33 (alleging that Morales "has been subjected to the conditions that have been widely reported at Delaney Hall," referencing public reports about those conditions, and alleging that "[t]hese conditions . . . have contributed to the emotional and psychological hardship" of detention), A36 (alleging that Morales's "confinement also subjects him to the conditions reported at Delaney Hall"), A39 (similar), A41 (similar).

counterfeit notes or bills, possession of drug paraphernalia, and driving while license suspended." A27; *see also* ECF 8-7 (criminal docket sheet listing felony and misdemeanor charges); ECF 8-8 (complaint/arrest affidavit listing charges and describing traffic stop and subsequent proceedings).

**3.** On June 4, the government notified the district court "on behalf of all parties" that they had "reached a settlement in principle to resolve this matter without the need for litigation" and "anticipate[d] submitting a joint stipulation of dismissal in the near future." A44 & n.1. "Based on this development, the parties respectfully propose[d] that the hearing" set for June 8 was "moot" and requested "that the Court cancel the hearing to preserve the Court's and the parties' resources." A44. Later that day, however, the district court denied the parties' joint request. It ordered that "the hearing on Monday will PROCEED AS SCHEDULED before the undersigned because the parties have failed to show cause why it should not go forward as required by the Order to Show Cause and the deadline to do so has elapsed." A47.

Later on June 4, Morales's counsel notified the district court that Morales had reversed his position regarding settlement and "expressed his desire to continue litigating this matter and pursuing the relief sought in his

Petition." A49. Morales's counsel did not request an evidentiary hearing or express a view on whether the June 8 hearing was appropriate.

**4.** On June 5, the United States Attorney's Office (USAO) notified the district court by letter that Morales had been transferred "from Delaney Hall to the Elizabeth Contract Detention Facility in New Jersey." A50. The letter noted that "the transfer moots any need to conduct the evidentiary hearing" on June 8, because that evidentiary hearing was ordered solely to receive evidence regarding conditions at Delaney Hall. *Id.* And Morales "is no longer subject to" those conditions. *Id.* Thus, the USAO's letter asked the Court to "cancel the hearing" and "rescind its order requiring [the government] to identify witnesses" for the hearing. *Id.*

The district court denied the request. ECF 20 (text order). Rather than address the argument that Morales's transfer mooted the Delaney Hall issues, the district court framed the issue more broadly: "the Court has reviewed [the government's] letter and is not persuaded that the transfer of [Morales] from Delaney Hall moots the concerns raised by his petition." *Id.* The district court ordered that it would "hear oral argument on that issue at the beginning of Monday's hearing," ordered the parties to "be prepared to testify," and ordered the government to "file [its] list of witnesses by no later

13

than noon" on June 5. *Id.* Otherwise, the "likely" result would be "the issuance of an Order to Show Cause why sanctions shall not be entered." *Id.*

Complying with that order, the USAO filed a letter providing the government's witness list. A52. The witnesses included a Supervisory Detention and Deportation Officer. *Id.* In the same letter, the USAO informed the Court that, having received authorization to do so, it would "file a mandamus petition challenging the Court's authority to proceed with Monday's hearing" by "no later than 9:00 a.m. Monday morning." *Id.* Accordingly, the letter "request[ed] that the [district court] stay commencement of the scheduled hearing pending disposition of the mandamus petition." *Id.*

The district court denied the stay request without giving substantive reasoning, describing the stay factors and stating only that the government's "informal request ha[d] not made the requisite showing." A55. It then noted, "[n]othing in this Order precludes Respondents from seeking relief from the Court of Appeals under FRAP 8(a)(2)." *Id.* And it stated that, "[a]bsent a stay by the Court of Appeals, the hearing on Monday will proceed as scheduled." *Id.*

**5.** Separate and apart from the habeas matter underlying the instant petition, civil litigation concerning Delaney Hall is proceeding before a

14

different judge in the District of New Jersey. *Washington v. The GEO Group, Inc.*, No. 2:26-cv-06466 (D.N.J.) (*GEO Group*). In that litigation, the Commissioner of the New Jersey Department of Health brought a claim in state court seeking "full access for inspection" to Delaney Hall. ECF 1-1 at 13 in *GEO Group* (June 2, 2026). It was this litigation that the district court here referenced as part of its basis for judicial notice that "the conditions of confinement at Delaney Hall have become a matter of national news coverage." A23 n.1. On June 2, The GEO Group removed the lawsuit against it to federal court. ECF 1 in *GEO Group* (June 2, 2026). And on June 5, the district judge assigned to that case ordered The GEO Group to "show cause, on or before June 12, 2026, as to why the relief requested should not be granted." ECF 3 in *GEO Group* (June 5, 2026) (text order). The district judge also requested "that the Department of Justice file a Statement of Interest" by June 12. *Id.*

**ARGUMENT**

Mandamus relief is appropriate where a petitioner has "no other adequate means to attain the relief [ ] desire[d]," where "the right to . . . the writ is clear and indisputable," and where "the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004); *see, e.g., Gillette v. Prosper*, 858 F.3d 833, 841 (3d Cir. 2017). That

standard is satisfied here. This matter presents all the hallmarks of a fishing expedition: injecting a new claim about a facility that is in the news for reasons unrelated to Morales, ignoring party-presentation principles, blowing past mootness, and countenancing a claim that does not belong in habeas.

There can be no reasonable dispute that the district court injected a claim into this case that the petitioner did not make or that it now insists on a hearing that it has twice been asked to cancel—once by both parties and both times by the government.[5] Equally clear is the mootness of any possible conditions-of-confinement claim by Morales regarding his detention at Delaney Hall: he has been transferred to another facility. The need for a hearing on Monday (to the extent it ever might arguably have existed) has evaporated; yet the district court now plans to move ahead under the revised justification that the transfer may not have "moot[ed] the concerns raised by [the habeas] petition." ECF 20 (text order). And if the hearing goes forward, the government will have no adequate opportunity later to correct the severe

---

[5] Although the government seeks a writ of mandamus, if the Court conceptualizes the requested relief as a writ of prohibition, the government is equally entitled to relief.  *See United States v. Santtini*, 963 F.2d 585, 593-94 (3d Cir. 1992) ("modern courts have shown little concern for the technical and historical differences between the two writs").

incursion into law-enforcement resources, separation of powers, and, likely, privileged information that the district court's unrestricted inquiry threatens to disclose. This Court should grant the petition—or at least grant the government's concurrently filed stay motion—to stop this train before it irretrievably leaves the station.

At a bare minimum, the Court should set appropriate parameters for the scope of any hearing it allows to proceed. *Cf. Cheney*, 542 U.S. at 390 (noting that courts must ensure that any permitted discovery is "precisely identified"). The district court's inquiry has to be focused on the conditions of Morales's confinement (if he were transferred back to Delaney Hall in the future—a possibility that there is no current plan or intention to effectuate). Morales's petition is not a class action, and the district judge cannot engage in general oversight of all conditions at Delaney Hall which are utterly unrelated to Morales's own detention at a *different facility*.

Additionally, the information subject to the district court's inquiry is likely to contain sensitive details protected by law-enforcement privilege, deliberative process privilege, or other protections against disclosure. Without an order from this Court requiring appropriate parameters to protect such details, a district court that has shown itself unrestrained by Article III limitations or the parties' pleadings may elicit testimony in open

court on these matters. Accordingly, the Court should at minimum order the district court to impose reasonable parameters on Monday's hearing, including by ordering that no information subject to law-enforcement privilege, deliberative-process privilege, or any other applicable privilege shall be disclosed and that questioning be limited to matters related to Morales's petition *for release.*

## I. The district court violated the party-presentation principle by injecting conditions claims into the case.

"Federal courts adhere"—or should adhere—"to the principle of party presentation." *Margolin v. Nat'l Ass'n of Immigr. Judges*, 608 U.S. ___, No. 25–767, 2026 WL 1463466, at *2 (May 26, 2026) (per curiam) (citing *Clark v. Sweeney*, 607 U.S. 7, 9–10 (2025)) (per curiam). The principle is a straightforward one: "points not argued will not be considered." *Margolin*, 608 U.S. at *2 (quoting *United States v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring in judgment)). It is that principle that distinguishes "our adversarial system of justice from an inquisitorial one." *Id.* In our adversarial system, "[t]he parties frame the issues for decision, while the court serves as neutral arbiter of matters the parties present." *Clark*, 607 U.S. at 9 (cleaned up). "To put it plainly, courts 'call balls and strikes'; they don't

get a turn at bat." *Id.* (quoting *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1724 (2020).

The district court squarely violated these principles here, adding its own theory to the case, supported by its own judicially noticed facts, and ordered an evidentiary hearing on the basis of this judge-crafted theory of the case. Eschewing the adversarial process and the party-presentation principle, the district court has adopted the role of an inquisitor taking its own at-bat rather than "call[ing] balls and strikes." *Lomax*, 140 S. Ct. at 1724.

The district court ordered fact-finding on the basis of its own theory of the case not advanced by Morales (in either his original or amended petition) and supported by facts not pled by Morales. A23 ("The Court therefore finds that an evidentiary hearing is required to hear testimony under oath from . . . one or more individuals with personal knowledge with respect to the conditions at Delaney Hall and the policies and practices that have led to those conditions."). In addition to violating the party-presentation principle, this step by the district court raises separation of powers concerns.

**1.** First, the district court's order requiring the government to produce a witness to testify about "the alleged conditions at Delaney Hall and the policies and practices that have led to those alleged conditions" violates the party-presentation principle. A23. Morales—who is represented by counsel—

did *not* ask for any such evidentiary hearing. *See* A41 (requesting, as an alternative to immediate release, "a prompt and constitutionally adequate individualized *custody* determination" (emphasis added)). Nor is the district judge's chosen subject of inquisition even germane to Morales's claims for relief. *See* A1-19, A25-A43. Indeed, the district judge already issued an order pertaining to Morales's motion for TRO that ordered the government, *inter alia*, to file a declaration under penalty of perjury indicating receipt of the district court's order, not to transfer Morales out of New Jersey, to inform the district court of any transfer within New Jersey, and to show cause within seven days why the district court should not order Morales released. A20-A21. The district court's subsequent, separate show-cause order deals "[a]s a separate matter" with its own concerns about Delaney Hall. A22. This is a clear violation of the party-presentation principle.

By choosing to "interpret[]" Morales to "at least in part, be arguing that his detention is arbitrary and capricious based on . . . conditions" at Delaney Hall, A22, the district court inserted a cause of action that Morales never pled. *See* A1-19, A25-A43. Morales alleged only two claims for relief alleging violations of his substantive and procedural due process rights. First, that the government detained Morales "without any individualized justification." A15 ¶ 52. Second, that Morales was detained without "any meaningful

20

opportunity for an individualized custody determination." A16 ¶ 56. Even in Morales's amended petition, he mentions the "conditions of confinement at Delaney Hall" in relation to the government's alleged failure to "establish[] through an individualized process that Mr. Morales poses a present danger to the community or a meaningful risk of flight." A39 ¶¶ 60, 64.

Whatever the merits of that claim, it is *not* a request for relief based on the conditions of confinement at Delaney Hall. Rather than allowing Morales to present allegations and a cause of action based on conditions of confinement, the district court decided that Morales had "alleged facts *which this Court believes* places this matter in such a position." A22-A23 (emphasis added). This is a quintessential violation of the party-presentation principle. Morales did not ask the district court for separate relief on the basis of the conditions of his confinement, but nonetheless the district court chose to augment Morales's pleadings with a theory of its own.

Indeed, to support its personal theory of the case in the absence of relevant arguments from Morales, the district court had to "take[] judicial notice" (i) "that the conditions of confinement at Delaney Hall have become a matter of national news coverage," (ii) of statistics for deaths in confinement from facilities across the country, and (iii) of litigation filed by Commissioner of the New Jersey Department of Health "seeking an order

21

requiring The GEO Group to permit the New Jersey Department of Health to conduct an inspection." A23 n.1 (citing news sources, the ice.gov website, and *Washington v. The GEO Group, Inc.*, Dkt. No. ESX-C-131-26 (N.J. Super. Ct., Ch. Div. June 2, 2026)). All these judicially noticed facts were used by the district court to support its "belie[f]" that Morales's Petition raises "an extreme case" warranting relief. A22 (citing case law in support of the proposition that a "claim based on conditions of confinement may only form a basis for relief in a habeas proceeding in an extreme case.").

In the past year alone, the Supreme Court has repeatedly rebuked courts for ruling on the basis of issues that the parties did not argue. In *Clark v. Sweeney*, a prisoner seeking habeas relief argued that his trial counsel was ineffective. 607 U.S. at 8-9. The Fourth Circuit reversed and granted a new trial not because of the prisoner's ineffective-assistance claim, but on confrontation and impartial-jury grounds that the prisoner had not claimed below. The Supreme Court reversed because the court of appeals "transgressed the party-presentation principle." *Id.*

Similarly, in *Margolin*, the parties "confined their arguments to the narrow question whether respondent's claims were, in fact, covered" by the Civil Service Reform Act (CSRA), and therefore channeled to the Merit Systems Protection Board. 608 U.S. at *2. When the Fourth Circuit "*sua*

22

*sponte* addressed a much broader" question than the one the parties presented, it "transformed respondent's argument that the CSRA did not channel its claims into one that the CSRA might not . . . channel *any* claims." *Id.* Reversing the Fourth Circuit (again), the Supreme Court reiterated its longstanding caution that "[f]ederal courts are not roving commissions licensed to sally forth each day looking for wrongs to right." *Id.* (quotation marks omitted) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 611 (1973), and *Sineneng-Smith*, 590 U.S. at 376). The district court here violated that time-honored principle by recasting Morales's allegations into a new theory to justify its apparent desire to audit conditions at Delaney Hall ahead of a similar inquiry in the separate *GEO Group* litigation pending before a different judge. *See* A23 n.1 (citing the *GEO Group* litigation).

**2.** Second, in addition to violating the party presentation principle, this "judicial 'usurpation of power,'" *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 390 (2004), raises serious separation of powers concerns because Congress, not the Judiciary, has the authority to conduct oversight investigations. *See Trump v. Mazars USA, LLP*, 591 U.S. 848, 862 (2020) ("This power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function.") (cleaned up). The implication of the district court's decision to move ahead with a hearing

23

about a facility at which Morales is no longer detained is to make the district court an overseer of operations at Delaney Hall rather than (properly) a decider of the claims in Morales's petition. The district court has no license to become such a freewheeling superintendent over "the federal government's core power to enforce immigration laws" through immigration detention. *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315, 319 (3d Cir. 2025). Interfering with that core Executive prerogative can also "risk[] compromising national security." *Id.* at 328. And here, the significant likelihood that the hearing will involve inquiries into highly sensitive and potentially privileged information involving security, law-enforcement decisions, and detainee care—among other topics—raises the stakes. All the more so because the district court has put no parameters on the hearing's scope and provided no mechanism for protecting privileged information from public disclosure.

"[I]f there has been a judicial usurpation of power the invocation of th[e] extraordinary remedy [of mandamus] will be warranted." *Santtini*, 963 F.2d at 594 (cleaned up). Such relief is warranted here where the district court has aggrandized to itself the investigative power.

24

II.    **Even if properly presented, the conditions claims are moot because Morales has been transferred to a different facility, ending his interest in challenging Delaney Hall conditions.**

"Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). This case-or-controversy requirement "limits the business of federal courts to 'questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process[.]'" *Id.* at 396 (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)). When the questions or "issues presented are no longer 'live,'" the case is moot. *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *see also Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." (cleaned up)). And an issue is moot if "changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Artway v. Att'y Gen. N.J.*, 81 F.3d 1235, 1246 (3d Cir. 1996) (quotation marks omitted).

25

Here, the circumstances that existed when Morales filed his habeas petition have fundamentally changed: he was transferred from Delaney Hall to the Elizabeth Contract Detention Facility. *See* A50. A conditions claim relating to Delaney Hall (which, as explained, Morales never brought) is thus moot because his change in circumstances has "forestalled any occasion for meaningful relief" regarding that claim. *Artway*, 81 F.3d at 1246; *see also Nunes v. Decker*, 480 F. App'x 173, 175 (3d Cir. 2012) (nonprecedential) (holding that alien's release from detention on an order of supervision mooted his challenge to the legality of his extended detention); *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (recognizing "[a]n inmate's transfer from the facility complained of generally moots" equitable claims challenging aspects of inmate's confinement at that facility); *Riley v. INS*, 310 F.3d 1253, 1257 (10th Cir. 2002) (same).

No exception to the mootness doctrine applies here. Under the "capable of repetition, yet evading review" exception, for example, a court may consider the merits of a case when "(1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Rendell v. Rumsfeld,* 484 F.3d 236, 241 (3d Cir. 2007) (citing *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). This

26

exception is narrow and available "only in exceptional situations." *Id.* at 241 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983); *Weinstein v. Bradford,* 423 U.S. 147, 14849 (1975)).

Neither prong of this exception is met. First, a conditions claim is not inherently "too short to be fully litigated." Many aliens are housed at Delaney Hall and could bring their own conditions claims against the government (albeit as a civil suit and not through habeas). *Cf. Leamer v. Fauver,* 288 F.3d 532, 542 (3d Cir. 2002) ("[W]hen the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983," not by way of a habeas corpus petition, "is appropriate."). Second, there is no reasonable expectation or demonstrated probability that Morales will be detained at Delaney Hall again (especially because the district court could order his release imminently). *Cf. Alvarez v. Smith,* 558 U.S. 87, 93 (2009) (refusing to apply the capable-of-repetition-yet-evading-review exception when "nothing suggests that the individual plaintiffs will likely again prove subject to the [defendant's allegedly illegal] seizure procedures").

Although the capable-of-repetition exception focuses on the litigation before the court, any concern that the underlying issues the district court seeks to investigate here (unlinked to any actual claim before it) may evade

review would also be unfounded. As noted, an alien housed at Delaney Hall may attempt to bring conditions claims in an appropriate cause of action. Further, as the district court here acknowledged, the State of New Jersey has a pending lawsuit against The GEO Group, Inc., which operates Delaney Hall; and that suit requests that the district court grant the New Jersey Department of Health full access to the facility to address its concerns about conditions facing detainees. *See Washington v. The GEO Group*, No. 2:26-cv-06466 (D. NJ June 2, 2026); A50. This undercuts any suggestion that the opportunity to seek review is elusive.

The voluntary-cessation exception to mootness is likewise unavailable for similar reasons. Although the Court is "reluctant to declare a case moot . . . when the defendant argues mootness because of some action it took unilaterally after litigation began," the Court recognizes mootness when "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Hartnett v. Penn. State. Ed. Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020) (internal citation and quotation omitted). This exception is not implicated here for a basic reason: Morales did not plead a conditions-of-confinement claim, and his transfer did not moot the claims that he did allege. *See* A50 (USAO's letter explaining that Morales's "transfer does *not* moot the petitioner's demand for either release or, alternatively, a bond

28

hearing before an immigration judge," but it "moots any need to conduct the evidentiary hearing the [district court] scheduled for Monday afternoon" (emphasis added)). Neither the government's district-court filings nor this petition argues that the entire habeas case is moot or that Morales will not continue to be detained absent court intervention; the government argues only that any purported need for Monday's hearing is moot because any conditions claim related to Delaney Hall is moot.[6] Further, the prospect of Morales's again being detained at Delaney Hall is entirely speculative, especially because the district court is likely to order his release and because ICE does not intend to transfer Morales back to Delaney Hall (absent some unanticipated circumstance that may require it).

Because the district court cannot grant any effective relief as to conditions of confinement at Delaney Hall given that Morales is no longer detained at Delaney Hall, any purported need for a hearing on Monday on conditions of confinement has evaporated. *See, e.g.*, *Sutton*, 323 F.3d at 248 (explaining that "[a]n inmate's transfer from the facility complained of generally moots the equitable and declaratory claims"); *Folk v. Warden Schuylkill FCI*, No. 23-1935, 2023 WL 5426740, at *2 (3d Cir. Aug. 23, 2023)

---

[6] Indeed, now that Morales is at another facility, he would lack standing to add a new claim relating to Delaney Hall.

(nonprecedential) (concluding that petitioner's transfer to another facility mooted his conditions-of-confinement claims). The district court's determination to proceed without even addressing the government's arguments on mootness—other than to say it "will hear oral argument on that issue" on Monday, ECF 20 (text order)—underscores that this matter has departed the realm of adversarial litigation and entered that of extra-judicial investigation. Mandamus is needed to correct this situation.

### III. Conditions-of-confinement claims may generally not be raised in habeas, which is the only relief sought here.

The district court speculated that Morales had implicitly raised an arbitrary-and-capricious challenge to conditions at Delaney Hall. *See* A41 ¶ 71. But no level of squinting at Morales's petition could make such a wish-casted claim appear. Even if Morales *had* attempted to plead such a claim, it would fail: conditions of confinement are not properly raised in his habeas petition.

The general habeas corpus statute allows district courts to issue writs of habeas corpus where, among other things, a detainee establishes that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention." (citation

omitted)). To that end, detainees may seek habeas relief based on challenges to "the validity of the fact or length of their confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973). Indeed, "the purpose of [the writ of habeas corpus] is not to redress civil injury, but to release the applicant from unlawful physical confinement." *Allen v. McCurry*, 449 U.S. 90, 104 (1980); *see also Bonadonna v. United States*, 446 F. App'x 407, 409 (3d Cir. 2011) (nonprecedential) ("Federal habeas corpus relief is available only 'where the deprivation of rights is such that it necessarily impacts the fact or length of detention.'" (quoting *Leamer*, 288 F.3d at 540)).

A challenge to detention conditions must generally be brought in some other form of action. *Cf. McCarthy v. Bronson*, 500 U.S. 136, 142 (1991) (stating that "a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody."). Such claims fall outside the traditional scope of habeas corpus, as panels of this Court have recognized. *See, e.g., Folk,* No. 23-1935, 2023 WL 5426740, at *2 (concluding that petitioner's conditions-of-confinement claims were not cognizable under § 2241 because his case was not an "extreme case[]" under *Hope*); *Leslie,* 363 F. App'x at 958 ("To the extent that [the petitioner] attempts to challenge the conditions of his confinement, we agree with the District Court that this habeas corpus

petition was not the proper vehicle to raise his claims."). Although this Court recognized the viability under § 2241 of an Eighth Amendment conditions-of-confinement claim for petitioners seeking release from detention in *Hope v. Warden York Cnty. Prison*, it did so only "[g]iven the extraordinary circumstances that existed in March 2020 because of the COVID-19 pandemic." 972 F.3d at 324. And in doing so, the Court emphasized that such claims are cognizable "*only in extreme cases*" and cautioned that it was "not creating a garden variety cause of action." *Id.* (citation omitted).

Even accepting that binding precedent for present purposes, although the district court here indicated it found this case could be "extreme" based in part on its judicial notice of extra-record allegations, it provided no doctrinal basis for that conclusion. *See* A22-A23 & n.1. Mandamus is warranted given the district court's improper expansion of a straightforward habeas claim seeking release into an improper investigation into conditions of confinement to support a claim that was not, and cannot properly, be brought in habeas.

## IV.    Mandamus is otherwise appropriate.

Mandamus is appropriate here and is the only realistic means of preventing the harms that will accompany the hearing should it go forward on Monday. The relevant inquiry is whether the government has any

recourse other than mandamus to address the erroneous order. *Santtini*, 963 F.2d at 594 ("[T]he Supreme Court has required that 'a party seeking issuance have no other adequate means to attain the relief he desires.'") (quoting *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980)). Here, the government has no feasible alternative recourse to avoid the impending incursion on its autonomy and confidentiality. Were there any doubt, the government has already asked *twice* for the hearing to be canceled; failing that, it requested that the district court stay the hearing pending the outcome of this petition. All of those requests were denied.

Any subsequent appeal cannot remedy the burdens of preparing for and attending the hearing, much less the harms of any disclosures made. Once the Supervisory Detention and Deportation Officer must prepare and appear for intrusive testimony in open court, the violation of the separation of powers and intrusion upon the prerogatives and autonomy of the Executive Branch will occur. *See Chicago Headline Club v. Noem*, 168 F.4th 1033, 1036 (7th Cir. 2026) (noting that court of appeals granted mandamus against order that "set[] the [district] court up as a supervisor of [government personnel's] activities, intruding into personnel management decisions of the Executive Branch."). That bell cannot be unrung. *Cf. Maness v. Meyers*, 419 U.S. 449, 460 (1975) ("When a court during trial orders a witness to

reveal information . . . [c]ompliance could cause irreparable injury because appellate courts cannot always 'unring the bell' once the information has been released."). The resulting loss of confidentiality by disclosing in a public forum potentially private, confidential, and sensitive law enforcement information and communications presents an irreparable harm that a subsequent appeal cannot cure. *See also U.S. Doge Serv.*, 145 S. Ct. at 1981 ("[S]eparation of powers concerns counsel judicial deference and restraint in the context of discovery regarding internal Executive Branch communications."). Even if such information is not disclosed, the harm from allowing the district court to conduct a unilaterally designed inquisition into a now-moot claim that was not pled cannot be undone later. And it will only open the door to more unjustified rulings later. This Court should intervene.

**CONCLUSION**

The petition for a writ of mandamus should be granted and the district court directed to cancel the evidentiary hearing scheduled for Monday, June 8, at 2:00 p.m. In the meantime, or in the alternative, the Court should grant the government's concurrently filed stay motion and order that the hearing not go forward while the mandamus petition is pending. Finally, even if the Court does not grant a stay or the relief requested in this petition, the Court should at minimum order the district court to impose reasonable parameters on Monday's hearing, including by ordering that no information subject to law-enforcement privilege, deliberative-process privilege, or any other applicable privilege shall be disclosed and that questioning be limited to matters related to Morales's petition *for release.*

June 6, 2026                                        Respectfully submitted,

BRETT A. SHUMATE                ROBERT FRAZER
Assistant Attorney General           United States Attorney
Civil Division

                                                  MARK E. COYNE
DREW C. ENSIGN                   Supervisory Assistant U.S. Attorney
Deputy Assistant Attorney General    Chief, Appeals Division

CHARLES E.T. ROBERTS          s/ *Elizabeth Hedges*
SEAN SKEDZIELEWSKI             ELIZABETH HEDGES
Counsel to the Assistant              Counsel to the Assistant Attorney
Attorney General                      General, Civil Division
                                                  U.S. Department of Justice
AUGUST E. FLENTJE                950 Pennsylvania Ave NW
Special Counsel for Immigration      Washington, DC 20530
Litigation                            (202) 616-0929
                                                  Elizabeth.T.Hedges@usdoj.gov
BENJAMIN MARK MOSS
Acting Senior Counsel for             *Counsel for Petitioners*
District Court Litigation
Office of Immigration Litigation

ALANNA T. DUONG
Senior Litigation Counsel

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this petition:

(1)   complies with Federal Rules of Appellate Procedure 21(d) and 32(c) because it has been prepared in 14-point Georgia, a proportionally spaced font, and that it complies with the type-volume limitation of Rule 21(d)(1) because it contains 7,688 words, according to Microsoft Word;

(2)   was scanned for viruses using the latest version of Microsoft CrowdStrike Falcon and no viruses or malware was detected; and

(3)   is identical to the text in any paper copies of the petition.

s/ *Elizabeth Hedges*
Elizabeth Hedges
Counsel to the Assistant Attorney
General, Civil Division

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2026, I electronically filed the foregoing petition with the United States Court of Appeals for the Third Circuit, along with the attached addendum, appearance form, and stay motion, by using the appellate CM/ECF system. I served the petition and attachments by email on the following counsel for the respondent (petitioner below), who consented to that method of service under Federal Rule of Appellate Procedure 25(c)(2)(B):

- Alexandra Minogue, Esq., Nova Law Group:

    aminogue@nova.law, sdestefani@nova.law

I also provided a copy to the district court by email:

- znq_orders@njd.uscourts.gov

s/ *Elizabeth Hedges*
Elizabeth Hedges
Counsel to the Assistant Attorney
General, Civil Division

**ADDENDUM**

## TABLE OF CONTENTS

Petition for Writ of Habeas Corpus and Motion for Temporary
Restraining Order/Injunctive Relief (ECF 1)......................................A1

Order to Show Cause (ECF 4) ..................................................... A20

Second Order to Show Cause (ECF 5) ...................................... A22

Amended Petition for Writ of Habeas Corpus (ECF 8)............................A25

Letter from the Government (ECF 15) ...................................... A44

Letter Order Denying Cancellation (ECF 16) .......................................... A46

Letter from Habeas Petitioner (ECF 17)................................... A48

Letter from the Government (ECF 19) ...................................... A50

Letter from the Government (ECF 22).....................................A52

Letter Order Denying Stay (ECF 23).......................................A54

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

FREIMAN XAVIEL HAMUI MORALES,
                                            *Petitioner*,

        v.

LUIS SOTO,
        in his official capacity as Director/Warden of
        Delaney Hall Detention Facility;

ARTHUR J. WILSON, JR.
        in his official capacity as Field Office Director,
        New Jersey Field Office, U.S. Immigration &
        Customs Enforcement;

TODD BLANCHE,
        in his official capacity as Attorney General, U.S.
        Department of Justice;

MARKWAYNE MULLIN,
        in his official capacity as Acting Secretary, U.S.
        Department of Homeland Security; and

TODD M. LYONS,
        in his official capacity as Acting Director, U.S.
        Immigration & Customs Enforcement;
                                            *Respondents*.

Civil Action No.:

**MOTION FOR TEMPORARY
RESTRAINING ORDER/INJUNCTIVE
RELIEF
&
PETITION FOR WRIT OF
HABEAS CORPUS PURSUANT
TO 28 U.S.C. § 2241**

**A#:** ▮▮▮▮▮▮▮

## MOTION FOR TEMPORARY RESTRAINING ORDER/INJUNCTIVE RELIEF

Petitioner, Freiman Xaviel Hamui Morales ("Mr. Morales"), respectfully moves before this Honorable Court for a Temporary Restraining Order and injunctive relief to enjoin Respondents from continuing his unlawful detention during the pendency of his habeas corpus petition filed pursuant to 28 U.S.C. § 2241.

**Mr. Morales is currently detained at Delaney Hall Detention Facility**. He is a native and citizen of Venezuela who entered the United States without inspection in 2021 and has since **pursued immigration relief, including** ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **and** ▮▮ **related**

1

A1

**protection**. Since arriving in the United States, Mr. Morales has worked in the construction industry, supported himself through honest employment, and established meaningful ties within his community and church.

**Mr. Morales has no criminal history** and no known history of violence. He is not alleged to pose a danger to the community. Rather, he was taken into ICE custody on or about March 25, 2026, following a traffic-related encounter involving a suspended driver's license. Respondents therefore continue to detain an individual with strong equities favoring release, including a consistent work history, active community involvement, ongoing pursuit of immigration relief, and a complete absence of criminal history.

Mr. Morales **has a pending ███ claim, pending ███ related protection, and an upcoming Master Hearing before the Immigration Court scheduled for June 9, 2026**. His immigration proceedings remain active and ongoing. Nevertheless, Respondents continue to detain him without any meaningful individualized custody determination regarding whether continued detention is necessary.

Mr. Morales has resided continuously in the United States since 2021, has worked consistently in construction, regularly attends church, and volunteers as a cameraman during church services and events. These factors demonstrate significant community ties and provide substantial assurance that he poses neither a danger to the community nor a meaningful risk of flight.

Compounding the hardship of his continued detention are the conditions he has endured while confined at Delaney Hall Detention Facility. Like other detainees housed at the facility, Mr. Morales remains subject to the stressful and restrictive conditions associated with prolonged immigration detention. His continued confinement has imposed significant emotional and

2

A2

psychological hardship while he seeks to pursue immigration relief and defend his case before the Immigration Court.

Conditions at Delaney Hall have been the subject of substantial public reporting, governmental statements, attorney reports, and detainee accounts documenting increasingly alarming allegations concerning the facility, including allegations of physical abuse, deployment of pepper spray, contaminated food, inadequate medical care, communication restrictions, lockdown conditions, and deteriorating living conditions. Public officials throughout New Jersey have openly expressed concern regarding conditions within the facility[1]. These conditions have only exacerbated the emotional and psychological burdens associated with Mr. Morales's detention.

This instant habeas petition challenges Mr. Morales's continued detention in the absence of any meaningful individualized custody determination, particularly in light of his pending ███ claim, pending ███ related protection, ongoing immigration proceedings, lack of any criminal history, long-standing employment history, strong community and church ties, good moral character, and the concerning conditions he has experienced while detained at Delaney Hall.

To obtain a temporary restraining order and preliminary injunction, a movant must demonstrate (1) a likelihood of success on the merits, (2) irreparable harm in the absence of relief,

---

[1] Daniella Silva, *Expired food, neglected medical care and hunger strike allegations fuel protests at N.J. ICE facility*, NBC News (May 26, 2026), available at https://www.nbcnews.com/news/us-news/expired-food-neglected-medical-care-hunger-strike-allegations-fuel-pr-rcna209102.

Office of Governor Mikie Sherrill, *Statement by Governor Sherrill on Delaney Hall* (May 24, 2026), available at https://www.nj.gov/governor/news/news/562026/approved/20260524a.shtml

Chris Sheldon & Steve Strunsky, IC*E agents pepper spray protesters, N.J. senator in clash outside Delaney Hall in Newark*, NJ.com (May 26, 2026), available at https://www.nj.com/news/2026/05/ice-agents-pepper-spray-protesters-nj-senator-in-clash-outside-delaney-hall-in-newark.html

FOX 5 New York, *Senator Cory Booker Discusses Conditions at Delaney Hall Detention Facility and Treatment of Immigration Detainees*, FOX 5 New York Interview (May 29, 2026) https://www.fox5ny.com/video/fmc2gwwipmj42v5k5z1.

A3

(3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020).

First, Mr. Morales is likely to succeed on the merits because his continued detention without any meaningful individualized custody determination violates basic principles of due process. Mr. Morales has a pending ███ claim ████████████ pending ██ related protection, no criminal history, and active immigration proceedings, including an upcoming Master Hearing before the Immigration Court. Despite these favorable equities, Respondents continue to detain him without any meaningful individualized determination regarding whether continued detention is justified.

Second, absent immediate intervention, Mr. Morales faces irreparable harm. He remains detained despite actively pursuing immigration relief and maintaining significant ties to the United States through his employment, church involvement, and community relationships. Every additional day of detention deprives him of his liberty, interferes with his ability to meaningfully participate in his immigration proceedings, and imposes significant emotional and psychological hardship.

Third, the balance of equities overwhelmingly favors Mr. Morales. He has no criminal history, has lived in the United States since 2021, has worked consistently in the construction industry, actively participates in his church community, and remains engaged in his immigration proceedings. He poses no danger to the community and has substantial incentives to comply with future proceedings, including his pending ███ claim, pending ██ related protection, and upcoming Master Hearing. By contrast, Respondents suffer no legitimate prejudice from releasing an individual who presents no meaningful public safety concern.

4

A4

Finally, the public interest strongly favors relief. The public has a substantial interest in ensuring that constitutional protections are upheld and that civil immigration detention does not become punitive incarceration imposed without meaningful due process. The public also has a strong interest in ensuring that individuals pursuing ▮▮▮▮▮▮▮▮ are afforded a fair opportunity to participate meaningfully in their immigration proceedings while maintaining access to counsel.

For the foregoing reasons, Petitioner respectfully requests that this Court:

(1) issue a Temporary Restraining Order enjoining Respondents from continuing Petitioner's detention pending resolution of the habeas petition;

(2) order his immediate release, or in the alternative, a prompt individualized bond hearing;

(3) enjoin any transfer absent notice to counsel; and

(4) grant such other and further relief as this Court deems just and proper.

## PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

Petitioner, Freiman Xaviel Hamui Morales, respectfully petitions this Honorable Court for a writ of habeas corpus to remedy his unlawful detention by Respondents, as follows:

### INTRODUCTION

1. Petitioner Freiman Xaviel Hamui Morales ("Mr. Morales") is a native and citizen of Venezuela who entered the United States without inspection in 2021. **He has since pursued immigration relief, including ███ ████████████████████ and ██ related protection**. Since arriving in the United States, he has worked consistently in the construction industry, established meaningful ties within his community and church, and maintained a law-abiding lifestyle. *Exhibit A: Declaration of Counsel Alexandra Minogue, Esq. in Support of Mr. Morales's Habeas Petition ("Exhibit A").*

2. Mr. Morales has no criminal history, no known history of violence, and is not alleged to pose a danger to the community. On or about March 25, 2026, he was taken into ICE custody following a traffic-related encounter involving a suspended driver's license. He remains actively engaged in immigration proceedings, including a pending ████ claim, ██ related protection, and a scheduled Master Hearing before the Immigration Court on June 9, 2026. *Exhibit B: EOIR Automated Case Information Reflecting Pending Immigration Proceedings ("Exhibit B").*

3. Mr. Morales is currently detained at Delaney Hall Detention Facility in New Jersey.

4. Despite his pending immigration relief, lack of criminal history, long-standing employment history, strong community ties, and demonstrated compliance with immigration proceedings, Respondents continue to detain Mr. Morales without any meaningful individualized custody determination or bond hearing.

5. Conditions at Delaney Hall have been the subject of significant public scrutiny and concern, including reports relating to inadequate food, sanitation issues, overcrowding, limited medical care, communication restrictions, and unsafe living conditions. These conditions have compounded the emotional and psychological burdens associated with Mr. Morales's detention.

6. Although Respondents may attempt to justify Petitioner's detention under immigration detention authority applicable to noncitizens in removal proceedings, the Fifth Amendment requires meaningful due process and individualized review where continued detention is imposed upon a non-dangerous individual actively pursuing immigration relief.

7. The Constitution does not permit the Government to continue detaining Mr. Morales without meaningful process while he pursues his immigration claims. Mr. Morales has no criminal history, has resided in the United States since 2021, has worked consistently in the construction industry, regularly attends church, volunteers as a cameraman during church services and events, and continues to pursue ▮▮▮▮ and ▮▮▮ related protection. His continued detention under these circumstances violates the Due Process Clause of the Fifth Amendment. See *Diop v. ICE Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011); *Chavez Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469 (3d Cir. 2015); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020). Accordingly, Mr. Morales respectfully seeks immediate release or, at minimum, a prompt and constitutionally adequate individualized bond hearing at which Respondents bear the burden of justifying continued detention.

## PARTIES

8. Mr. Morales has been detained by Respondents since March 25, 2026, at Delaney Hall Detention Facility ("Delaney Hall").

7

A7

9.  Respondent Luis Soto is named in his official capacity as the Director/Warden of Delaney. Mr. Soto is responsible for the operation of Delaney, where Mr. Morales is currently detained.

10. Respondent Arthur J. Wilson is named in his official capacity as the Director of the New Jersey Field Office for ICE. Mr. Wilson is responsible for arrests, processing, detention, production, transfer, and release of individuals in removal proceedings. He is a legal custodian of Mr. Morales.

11. Respondent Todd Blanche is named in his official capacity as the U.S. Attorney General ("AG"). AG Blanche is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103(g) and oversees the Executive Office for Immigration Review ("EOIR"). He is a legal custodian of Mr. Morales.

12. Respondent Markwayne Mullin is named in his official capacity as the Acting Secretary of the U.S. Department of Homeland Security ("DHS"). Mr. Mullin is responsible for the administration of immigration laws under 8 U.S.C. § 1103(a) and oversees ICE. He is a legal custodian of Mr. Morales.

13. Respondent Todd M. Lyons is named in his official capacity as the Acting Director of ICE. Mr. Lyons is responsible for the administration of federal immigration law and the execution of detention and removal determinations. He is a legal custodian of Mr. Morales.

## **JURISDICTION**

14. This Court has proper jurisdiction over Mr. Morales' Petition for Writ of Habeas Corpus. As per 28 U.S.C. § 2241, this Court has the discretion to evaluate and grant the instant writ of habeas corpus. Under 28 U.S.C. § 1331, this Court has original jurisdiction over the federal issue arising in this matter. Article I, § 9, cl. 2 of the United States Constitution, the Suspension Clause, protects the privilege of habeas corpus. The All-Writs Act, 28 U.S.C. § 1651, grants

this Court with remedial authority to issue this necessary writ. The Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, specifically allows this Court to grant injunctive and declaratory relief if it sees fit.

15. Federal district courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the lawfulness or constitutionality of their detention by DHS; as well as claims by noncitizens seeking to protect their due process rights. *See, Jennings v. Rodriguez*, 138 S. Ct. 830, 840-41 (2018).

16. Mr. Morales' current detention as enforced by Respondents constitutes a "severe restraint [on his] individual liberty," such that he is "in custody in violation of the Constitution or laws … of the United States." *Hensley v. Municipal Court,* 411 U.S. 345, 351 (1973); 28 U.S.C. § 2241(c)(3).

## VENUE

17. Venue is proper in the District of New Jersey. Pursuant to 28 U.S.C. § 2241(d), a writ of habeas corpus may be filed in the district where the Petitioner is held in custody. Under 28 U.S.C. § 1391 (b) (2), a proper venue is where a substantial part of the events and omissions gave rise to the claim.

18. Mr. Morales is currently in ICE custody at Delaney, where a substantial part of the events giving rise to his habeas claim occurred. Due to the custody location and occurrence in events, it is proper to file in the District of New Jersey.

## EXHAUSTION

19. No statutory exhaustion requirements exist as to Mr. Morales' unlawful detention claims. *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000).

20. Although exhaustion is not statutorily required when challenging detention under 28 U.S.C.

9

A9

§2241, many courts still require proof of exhaustion largely to the appropriate agency's benefit. *Id*.

21. There are several exceptions that courts consider when evaluating exhaustion requirements. An immigrant detainee advancing a due process claim is likely to be exempt because the Board of Immigration Appeals ("BIA") does not have jurisdiction to adjudicate a constitutional issue. Mr. Morales is not required to prove exhaustion because he is advancing due process claims in the instant habeas petition.

<strong><u>STATEMENT OF FACTS</u></strong>

22. Petitioner Freiman Xaviel Hamui Morales ("Mr. Morales") is a native and citizen of Venezuela. He entered the United States without inspection in 2021 and has since pursued immigration relief, including ███ ███████████████ and ██ related protection. Since arriving in the United States, he has worked consistently in the construction industry, established meaningful ties within his community and church, and maintained a law-abiding lifestyle. *Exhibit A: Declaration of Counsel Alexandra Minogue, Esq. in Support of Mr. Morales's Habeas Petition ("Exhibit A")*.

23. Mr. Morales has no criminal history and is not alleged to pose a danger to the community. Throughout his time in the United States, he has demonstrated good moral character, supported himself through employment, regularly attended church, and volunteered as a cameraman during church services and events. *Id*.

24. Prior to his detention, Mr. Morales was employed in the construction industry and actively pursuing immigration relief. His ██████ claim and ███ related protection remain pending, and he intends to continue pursuing all available relief under the immigration laws. *Exhibit B:*

10

# A10

*EOIR Automated Case Information Reflecting Pending Immigration Proceedings ("Exhibit B").*

**Mr. Morales' Detention and Proceedings**

28. Mr. Morales is currently detained at Delaney Hall Detention Facility in New Jersey. He was taken into ICE custody on or about March 25, 2026, following a traffic-related encounter involving a suspended driver's license, and remains detained while pursuing immigration relief.

29. Mr. Morales has an upcoming Master Hearing before the Immigration Court scheduled for June 9, 2026. Despite his lack of criminal history, strong community ties, employment history, and active pursuit of immigration relief, he has not been provided any meaningful individualized custody determination regarding whether continued detention is necessary.

**Mr. Morales' Conditions of Confinement at Delaney Hall**

30. During his detention, Mr. Morales has been subjected to the conditions that have been widely reported at Delaney Hall Detention Facility.

31. Public reports, governmental statements, attorney accounts, and detainee reports have documented concerns relating to food quality, sanitation, overcrowding, limited medical care, communication restrictions, and overall living conditions within the facility.

32. These conditions, combined with the uncertainty and stress associated with prolonged immigration detention, have contributed to the emotional and psychological hardship experienced by Mr. Morales while in custody.

33. Mr. Morales remains in ICE custody at Delaney Hall while actively pursuing ███ relief, ███ related protection, and other available immigration relief through his ongoing immigration proceedings.

11

A11

## LEGAL FRAMEWORK

I. MR. MORALES IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS THAT HIS DETENTION IS UNLAWFUL & VIOLATES HIS DUE PROCESS RIGHTS.

34. The Due Process Clause of the Fifth Amendment applies to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001); *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Reno v. Flores*, 507 U.S. 292, 306 (1993); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Individuals navigating the immigration system in pursuit of lawful status are therefore entitled to notice, a meaningful opportunity to be heard, and protection against governmental restraints that deprive them of liberty or property interests. *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). With respect to detention in particular, the Supreme Court has made clear that civil confinement "for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

A. Categorical Detention Without Meaningful Process Violates Due Process.

35. Respondents may attempt to justify Mr. Morales's continued detention through categorical detention frameworks applicable to noncitizens in removal proceedings. However, the application of such frameworks here produces an unconstitutional result. Mr. Morales has no criminal history, remains actively engaged in ongoing immigration proceedings, and continues to pursue ███ relief ██████████████ and ███ related protection.

36. Since arriving in the United States in 2021, Mr. Morales has worked consistently in the construction industry, established meaningful ties within his community and church, and has never been afforded a meaningful opportunity to demonstrate that he poses no danger to the community and no meaningful risk of flight.

12

A12

37. The Constitution does not permit civil detention to operate through automatic incarceration untethered from individualized process. *Zadvydas*, 533 U.S. at 690; *United States v. Salerno*, 481 U.S. 739, 747 (1987); *Mathews*, 424 U.S. at 335.

38. Federal courts have already recognized the constitutional concerns raised by categorical detention schemes that eliminate individualized custody determinations. See *Maldonado Bautista v. Santacruz, Jr.*, No. 5:25-cv-01873 (C.D. Cal. Feb. 18, 2026). Continued detention without meaningful review cannot be reconciled with the Fifth Amendment, particularly where, as here, the detainee has no criminal history, has established significant community ties, regularly participates in church activities, maintains pending claims for immigration relief, and continues to pursue those claims through ongoing immigration proceedings.

### B.  Mr. Morales' Continued Detention Without an Individualized Custody Determination Violates Procedural Due Process.

39. When a protected liberty interest is at stake, courts must balance the factors set forth in *Mathews v. Eldridge*, including: (1) the private interest affected; (2) the risk of erroneous deprivation through existing procedures; and (3) the government's interest. 424 U.S. at 335.

40. Mr. Morales's liberty interest is substantial. He fled Venezuela, has a pending ████ claim ████████████████ pending ██ related protection, and remains detained while pursuing relief before the Immigration Court. He also continues to endure the conditions of confinement at Delaney Hall, which have been the subject of significant public concern.

41. Despite these significant interests, Mr. Morales remains detained without any meaningful custody review. His continued confinement deprives him of his liberty, interferes with his ability to meaningfully participate in his immigration proceedings, and subjects him to the conditions reported at Delaney Hall.

42. The risk of erroneous deprivation is substantial. Mr. Morales has never been afforded a meaningful opportunity to demonstrate that he poses no danger to the community and no meaningful risk of flight despite his lack of criminal history, longstanding residence in the United States, consistent employment history, strong community and church ties, and ongoing pursuit of immigration relief. By contrast, the Government's interests can be fully satisfied through release or, at minimum, a prompt and constitutionally adequate individualized custody determination.

43. Under *Mathews*, the balance weighs decisively in Mr. Morales' favor. His continued detention without meaningful individualized review violates procedural due process.

### C. Mr. Morales' Continued Detention Is Arbitrary and Violates Substantive Due Process.

44. Civil immigration detention is constitutionally permissible only where it bears a reasonable relation to a legitimate regulatory purpose. Where detention becomes excessive, arbitrary, or untethered from individualized necessity, it violates substantive due process. *Zadvydas*, 533 U.S. at 690; *Salerno*, 481 U.S. at 747.

45. Mr. Morales's continued detention serves no legitimate regulatory purpose. He has no criminal history, remains actively engaged in ongoing immigration proceedings, and continues to pursue ███ relief ████████████ and ███ related protection. He has resided in the United States since 2021, worked consistently in the construction industry, and established meaningful ties within his community and church.

46. Continued detention under these circumstances, particularly in the absence of any individualized custody determination, bears no reasonable relation to any legitimate governmental objective. Mr. Morales poses no meaningful danger to the community and no

A14

meaningful risk of flight, yet remains detained while pursuing relief before the Immigration Court.

47. Because Mr. Morales's detention is arbitrary, excessive, and imposed without adequate procedural safeguards, it violates the Due Process Clause of the Fifth Amendment and cannot be sustained.

## CLAIMS FOR RELIEF
## COUNT ONE

**VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION (SUBSTANTIVE DUE PROCESS)**

48. Petitioner re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

49. Mr. Morales is neither a flight risk nor a danger to the community. He has no criminal history, has pending immigration relief, including ████ ██████████████████ and ██ related protection, and remains actively engaged in ongoing immigration proceedings.

50. Civil immigration detention must bear a reasonable relation to a legitimate regulatory purpose and cannot become punitive in nature. *Zadvydas v. Davis*, 533 U.S. 678, 690-91 (2001). Because Mr. Morales poses no meaningful danger to the community and no meaningful risk of flight, his continued detention serves no legitimate regulatory purpose.

51. Mr. Morales's continued detention deprives him of his liberty, interferes with his ability to meaningfully pursue his immigration claims, including his ████ and ████ related relief, and subjects him to the conditions of confinement at Delaney Hall.

52. Detaining Mr. Morales under these circumstances, without any individualized justification and despite his lack of criminal history, strong community ties, consistent employment history, and

15

A15

ongoing pursuit of immigration relief, renders his confinement excessive, punitive, arbitrary, and unconstitutional in violation of the Due Process Clause of the Fifth Amendment.

**COUNT TWO**

**VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION (PROCEDURAL DUE PROCESS)**

53. Petitioner re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

54. The Fifth Amendment protects all persons from deprivation of liberty without due process of law.

55. Mr. Morales possesses a substantial liberty interest in freedom from civil detention and in meaningfully pursuing his pending immigration relief, including ████ ██████████ ████ and ███ related protection.

56. Despite that protected liberty interest, Mr. Morales has been detained without any meaningful opportunity for an individualized custody determination. Respondents continue to confine him without any hearing to assess whether he poses a danger to the community or a meaningful risk of flight.

57. The risk of erroneous deprivation is substantial. Mr. Morales has never been afforded a meaningful opportunity to demonstrate that he poses no danger to the community and no meaningful risk of flight despite having no criminal history, maintaining strong community ties, working consistently in the United States since 2021, and remaining actively engaged in immigration proceedings.

58. Continued detention also interferes with Mr. Morales's ability to pursue his pending immigration relief while subjecting him to the hardships of prolonged detention and the conditions of confinement at Delaney Hall.

59. Because Mr. Morales continues to be detained without a meaningful individualized custody determination, he is being deprived of liberty without constitutionally sufficient process in violation of the Due Process Clause of the Fifth Amendment.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioner respectfully requests that this Court:

1. Assume jurisdiction over this action pursuant to 28 U.S.C. § 2241 and the United States Constitution;

2. Issue a Writ of Habeas Corpus ordering Mr. Morales' **immediate release** from Respondents' custody on the ground that his continued detention violates the Due Process Clause of the Fifth Amendment;

3. In the alternative, order Respondents to **immediately release Mr. Morales under reasonable conditions of supervision**;

4. In the alternative, **enter a self-executing order requiring Respondents, within a deadline established by this Court, to either (a) fully respond to the Petition on a paragraph-by-paragraph basis, together with all records, documents, and legal authority supporting Petitioner's continued detention, or (b) release Mr. Morales from custody**. If Respondents fail to timely comply, Petitioner respectfully requests that the Court deem Respondents to have elected release rather than merits briefing and order Mr. Morales immediately released from custody;

A17

5. In the alternative, order a prompt and constitutionally adequate individualized custody determination before an Immigration Judge;

6. Order that any custody hearing place the burden on the Government to establish, by clear and convincing evidence, that Mr. Morales poses a danger to the community or a meaningful risk of flight;

7. Retain jurisdiction to review any custody determination to ensure compliance with this Court's Order and constitutional due process requirements;

8. Enter injunctive relief prohibiting Respondents from transferring Mr. Morales out of this District during the pendency of this action, particularly because such a transfer would interfere with his ability to communicate with counsel and meaningfully participate in his ongoing immigration proceedings;

9. Enter injunctive relief prohibiting Respondents from re-arresting or re-detaining Mr. Morales absent lawful authority and constitutionally adequate process;

10. Grant such other and further relief as this Court deems just and proper.


**Dated:** **06/01/2026**                                    Respectfully Submitted,

_Alexandra Minogue_
Alexandra Minogue, Esq.
NJ Bar ID: 479582024
Nova Law Group
21 Fulton Street
Newark, NJ 07102
E: aminogue@nova.law
P: 844-844-6682
*Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I, undersigned counsel, hereby certify that on this date, I filed this Motion for Temporary Restraining Order and Injunctive Relief and Petition for Writ of Habeas Corpus with all attachments using the PACER system.

Dated: 06/01/2026                                    Respectfully Submitted,

<br>

Alexandra Minogue, Esq.
NJ Bar ID: 479582024
Nova Law Group
21 Fulton Street
Newark, NJ 07102
E: aminogue@nova.law
P: 844-844-6682
*Counsel for Petitioner*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

FREIMAN XAVIEL HAMUI MORALES,

      Petitioner,

  v.

LUIS SOTO, *et al.*,

      Respondents.

Civil Action No. 26-6414 (ZNQ)

**ORDER**

This matter comes before the Court on Petitioner's petition for a writ of habeas corpus (ECF No. 1) and motion seeking a temporary restraining order. (ECF No. 2.) This Court has screened the petition as required by Rule 4 of the Rules Governing Section 2254 Cases, applicable to § 2241 through Rule 1(b), and determined that the dismissal of this matter prior to a response from the Government is not warranted. As Petitioner has alleged facts indicating that he is being improperly detained under an interpretation of the applicable immigration statutes which this Court has repeatedly rejected, *see, e.g., Valerio v. Joyce*, No. 25-17225, 2025 WL 3251445 (D.N.J. Nov. 21, 2025); *Hueso v. Soto*, No. 26-1455, 2026 WL 539271 (D.N.J. Feb. 26, 2026); *Fajardo-Nugra v. Soto*, No. 26-975, 2026 WL 579192 (D.N.J. Mar. 2, 2026), the Government shall be directed to show cause within seven days why this Court should not order Petitioner's immediate release.

**IT IS THEREFORE** on this 2nd day of June 2026,

**ORDERED** that the Government shall show cause within seven days why this Court should not order Petitioner released; it is further

**ORDERED** that Petitioner may file a reply within three days of the date on which the Government files its response; it is further

A20

**ORDERED** that the Court's Order enjoining the Government from transferring Petitioner out of New Jersey (ECF No. 3) shall remain in place pending a final decision in this matter; it is further

**ORDERED** that the Government shall inform the Court of any transfer of Petitioner out of Delaney Hall, including any transfer which may have predated the Court's order enjoining transfers, within twenty-four hours of its occurrence; it is further

**ORDERED** that ICE shall file a declaration, signed under penalty of perjury, either by hand or electronically, by either the Newark Field Office Director or by the Newark Field Office Deputy Director, that indicates that ICE has (i) received this Court's Order prohibiting Petitioner's transfer from New Jersey; and (ii) received written legal advice from the United States Attorney's Office on the subject of ICE's obligation to comply with that Order; the declaration shall be filed on the public docket of the Court on or before **8:00 p.m. EDT on June 2, 2026**; it is further

**ORDERED** that the United States Attorney's Office shall immediately file a letter on the Court's public docket if an Order of the Court is violated in connection with this case; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Order upon Petitioner and the Government electronically.

s/ Zahid N. Quraishi  
**ZAHID N. QURAISHI**  
**UNITED STATES DISTRICT JUDGE**

A21

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FREIMAN XAVIEL HAMUI MORALES,** | Civil Action No. 26-6414 (ZNQ) |
| Petitioner, | |
| v. | **ORDER TO SHOW CAUSE** |
| **LUIS SOTO,** *et al.*, | |
| Respondents. | |

This matter comes before the Court on Petitioner's petition for a writ of habeas corpus (ECF No. 1) and motion seeking a temporary restraining order. (ECF No. 2.) In a separate Order issued today, the Court has instructed the Government show cause why Petitioner should not be released.

As a separate matter, Petitioner also asserts in his habeas petition that he has been subjected to unlawful conditions of confinement at Delaney Hall, including inadequate food, sanitation issues, overcrowding, limited medical care, restrictions on communications, unsafe living arrangements, and exposure to pepper spray. (*See* ECF No. 1 at 7, 11.) Petitioner contends that these conditions have negatively affected him and exacerbated the burdens of his unlawful detention. (*Id.*) Having reviewed these allegations, this Court interprets Petitioner to, at least in part, be arguing that his detention is arbitrary and capricious based on these conditions.

A claim based on conditions of confinement may only form a basis for relief in a habeas proceeding in an extreme case. *See Folk v. Warden Schuykill FCI*, Civ. No. 23-1935, 2023 WL 5426740, at *1–2 (3d Cir. Aug. 23, 2023) (quoting *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 324 (3d Cir. 2020)). Here, Petitioner has alleged facts which this Court believes places this

A22

matter in such a position.[1]  The Court finds that the issue cannot be resolved solely through certifications which do not permit credibility determinations.  The Court therefore finds that an evidentiary hearing is required to hear testimony under oath from Petitioner as well as one or more individuals with personal knowledge with respect to the conditions at Delaney Hall and the policies and practices that have led to those conditions.

**IT IS THEREFORE** on this 2nd day of June 2026,

**ORDERED** that the parties shall show cause in writing why an evidentiary hearing should not be conducted before the undersigned with respect to the conditions of confinement at Delaney Hall on **Monday June 8, 2026 at 2:00 p.m.** with Petitioner[2] and one or more officials with personal knowledge with respect to the alleged conditions at Delaney Hall and the policies and practices that have led to those alleged conditions; it is further

**ORDERED** that the parties shall file simultaneous briefs[3] by no later than **Thursday June 4, 2026 at noon**; and it is further

---

[1] The Court also takes judicial notice that the conditions of confinement at Delaney Hall have become a matter of national news coverage.  *See, e.g.,* https://www.foxnews.com/politics/newark-mayor-questions-state-police-tactics-delaney-hall-sherrills-order-calls-agency-sword (last visited June 2, 2026) and https://www.cnn.com/2026/06/02/us/delaney-hall-new-jersey-ice-protests-tuesday (last visited June 2, 2026).  U.S. Immigration and Customs Enforcement's own reporting discloses the deaths of 30 detainees while in custody since October 2025, *see* https://www.ice.gov/detain/detainee-death-reporting (last visited June 2, 2026), one of whom was housed at Delaney Hall, *see* https://www.ice.gov/news/releases/criminal-illegal-alien-passes-away-university-hospital-following-medical-emergency.  The Court also takes judicial notice that the Commissioner of the New Jersey Department of Health has filed suit in New Jersey state court against The GEO Group, the private entity operating Delaney Hall, seeking an order requiring The GEO Group to permit the New Jersey Department of Health to conduct an inspection.  *See Washington v. The GEO Group, Inc.,* Docket No. ESX-C-131-26 (N.J. Super. Ct., Ch. Div. June 2, 2026).

[2] The Government is reminded that a writ may be required to produce Petitioner for the purposes of the hearing.  The parties will also need to advise the Court whether an interpreter may be needed for the hearing.

[3] Respondents' brief shall disclose the name(s) and title(s) of the witness(es) that will testifying on their behalf at the hearing.

ORDERED that the Clerk of the Court shall serve a copy of this Order upon Petitioner and the Government electronically.

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

FREIMAN XAVIEL HAMUI MORALES,
                              *Petitioner*,

        v.

LUIS SOTO,
        in his official capacity as Director/Warden of
        Delaney Hall Detention Facility;

ARTHUR J. WILSON, JR.
        in his official capacity as Field Office Director,
        New Jersey Field Office, U.S. Immigration &
        Customs Enforcement;

TODD BLANCHE,
        in his official capacity as Attorney General, U.S.
        Department of Justice;

MARKWAYNE MULLIN,
        in his official capacity as Acting Secretary, U.S.
        Department of Homeland Security; and

TODD M. LYONS,
        in his official capacity as Acting Director, U.S.
        Immigration & Customs Enforcement;
                              ***Respondents.***

Civil Action No.:  3:26-cv-06414

**AMENDED
PETITION FOR WRIT OF
HABEAS CORPUS PURSUANT
TO 28 U.S.C. § 2241**

**A#:** ▮▮▮▮▮▮▮▮

## AMENDED

## PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

Petitioner, Freiman Xaviel Hamui Morales, respectfully petitions this Honorable Court for

a writ of habeas corpus to remedy his unlawful detention by Respondents, as follows:

## INTRODUCTION

1. Petitioner Freiman Xaviel Hamui Morales ("Mr. Morales") is a young Venezuelan national

   who came to the United States seeking protection from the conditions that forced him to leave

   his home country. Since entering the United States in 2021, he has not hidden from authorities,

1

A25

lived in the shadows, or attempted to evade the immigration system. To the contrary, he has affirmatively sought protection through the very legal processes Congress created. He has pursued ▮ and obtained ▮ related protection. *Exhibit A: Amended Declaration of Counsel Alexandra Minogue, Esq. in Support of Mr. Morales's Habeas Petition ("Exhibit A"). Exhibit B: I-589 & Corresponding Documents ("Exhibit B"); Exhibit C:* ▮ *("Exhibit C").* In addition, Mr. Morales has maintained lawful employment in the construction industry, established meaningful ties within his community and church, regularly attended religious services, and volunteered as a cameraman during church services and community events. *Exhibit D: Personal Documents (SSN, Passport, etc.);Exhibit E: Letters in Support ("Exhibit E").*

2. On or about March 25, 2026, Mr. Morales was taken into ICE custody following a traffic-related encounter involving a suspended driver's license. He remains actively engaged in immigration proceedings, including a pending ▮ claim, ▮ related protection, and a scheduled Master Hearing before the Immigration Court on June 9, 2026. *Exhibit F: EOIR Automated Case Information Reflecting Pending Immigration Proceedings ("Exhibit F").*

3. Mr. Morales is currently detained at Delaney Hall Detention Facility in New Jersey.

4. Respondents continue to detain Mr. Morales despite his pending immigration relief, long-standing employment history, strong community ties, and active participation in his immigration proceedings.

5. Although Respondents may rely upon a prior Florida criminal case arising from a January 2026 traffic stop, that matter involved non-violent offenses, resulted in no term of incarceration, and was resolved through a disposition that withheld adjudication and imposed probationary conditions. The case did not involve allegations of violence, weapons, trafficking, or harm to

any individual. *Exhibit G: Criminal Case Information Online Results ("Exhibit G")*; *Exhibit H: Criminal Complaint ("Exhibit H")*.

6.  Publicly available records reflect that the Florida matter involved charges relating to possession of cocaine, possession of counterfeit notes or bills, possession of drug paraphernalia, and driving while license suspended. The state court resolved the matter through dispositions withholding adjudication, imposing probation and financial penalties, and ultimately closing the case. At no point was Mr. Morales sentenced to incarceration, and the record contains no allegation that he engaged in violent conduct or posed a danger to the public. *Id.*

7.  Further, the Constitution does not permit detention by accusation. Nor does it permit continued civil detention based solely upon the existence of prior criminal allegations.

8.  Conditions at Delaney Hall have been the subject of significant public scrutiny and concern, including reports relating to inadequate food, sanitation issues, overcrowding, limited medical care, communication restrictions, and unsafe living conditions. These conditions have compounded the emotional and psychological burdens associated with Mr. Morales's detention. [1]

---

[1] Daniella Silva, *Expired food, neglected medical care and hunger strike allegations fuel protests at N.J. ICE facility*, NBC News (May 26, 2026), available at https://www.nbcnews.com/news/us-news/expired-food-neglected-medical-care-hunger-strike-allegations-fuel-pr-rcna209102.

Office of Governor Mikie Sherrill, *Statement by Governor Sherrill on Delaney Hall* (May 24, 2026), available at https://www.nj.gov/governor/news/news/562026/approved/20260524a.shtml

Chris Sheldon & Steve Strunsky, IC*E agents pepper spray protesters, N.J. senator in clash outside Delaney Hall in Newark*, NJ.com (May 26, 2026), available at https://www.nj.com/news/2026/05/ice-agents-pepper-spray-protesters-nj-senator-in-clash-outside-delaney-hall-in-newark.html

FOX 5 New York, *Senator Cory Booker Discusses Conditions at Delaney Hall Detention Facility and Treatment of Immigration Detainees*, FOX 5 New York Interview (May 29, 2026) https://www.fox5ny.com/video/fmc2gwwipmj42v5k5z1.

A27

9. Although Respondents may attempt to justify Petitioner's detention based upon his immigration status and prior criminal charges, the Fifth Amendment requires meaningful due process and individualized review before a noncitizen may be subjected to prolonged detention. The Government cannot rely solely upon the existence of prior non-violent criminal charges to justify continued detention without an individualized custody determination.

10. The Constitution does not permit the Government to continue detaining Mr. Morales without meaningful process while he pursues his immigration claims. Mr. Morales has resided in the United States since 2021, has worked consistently in the construction industry, regularly attends church, volunteers as a cameraman during church services and events, and continues to pursue ███ and ███ related protection.

11. The fact that USCIS previously granted Petitioner ███ related protection demonstrates that the federal government itself previously determined that Petitioner was eligible for ███ ███ and employment authorization in the United States. While ███ does not resolve the ultimate merits of Petitioner's immigration case, it further undermines any suggestion that Petitioner is the type of individual who must be categorically imprisoned without meaningful process.

12. While Respondents may point to a prior Florida criminal matter, that case involved no allegations of violence, weapons, trafficking, or danger to the community and resulted in no incarceration. Under these circumstances, Mr. Morales's continued detention without a constitutionally adequate individualized custody determination violates the Due Process Clause of the Fifth Amendment. See *Diop v. ICE Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011); *Chavez Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469 (3d Cir. 2015); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020). Accordingly, Mr. Morales

4

**A28**

respectfully seeks immediate release or, at minimum, a prompt and constitutionally adequate individualized bond hearing at which Respondents bear the burden of justifying continued detention.

**PARTIES**

13. Mr. Morales has been detained by Respondents since March 25, 2026, at Delaney Hall Detention Facility ("Delaney Hall").

14. Respondent Luis Soto is named in his official capacity as the Director/Warden of Delaney. Mr. Soto is responsible for the operation of Delaney, where Mr. Morales is currently detained.

15. Respondent Arthur J. Wilson is named in his official capacity as the Director of the New Jersey Field Office for ICE. Mr. Wilson is responsible for arrests, processing, detention, production, transfer, and release of individuals in removal proceedings. He is a legal custodian of Mr. Morales.

16. Respondent Todd Blanche is named in his official capacity as the U.S. Attorney General ("AG"). AG Blanche is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103(g) and oversees the Executive Office for Immigration Review ("EOIR"). He is a legal custodian of Mr. Morales.

17. Respondent Markwayne Mullin is named in his official capacity as the Acting Secretary of the U.S. Department of Homeland Security ("DHS"). Mr. Mullin is responsible for the administration of immigration laws under 8 U.S.C. § 1103(a) and oversees ICE. He is a legal custodian of Mr. Morales.

18. Respondent Todd M. Lyons is named in his official capacity as the Acting Director of ICE. Mr. Lyons is responsible for the administration of federal immigration law and the execution of detention and removal determinations. He is a legal custodian of Mr. Morales.

A29

## JURISDICTION

19. This Court has proper jurisdiction over Mr. Morales' Petition for Writ of Habeas Corpus. As per 28 U.S.C. § 2241, this Court has the discretion to evaluate and grant the instant writ of habeas corpus. Under 28 U.S.C. § 1331, this Court has original jurisdiction over the federal issue arising in this matter. Article I, § 9, cl. 2 of the United States Constitution, the Suspension Clause, protects the privilege of habeas corpus. The All-Writs Act, 28 U.S.C. § 1651, grants this Court with remedial authority to issue this necessary writ. The Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, specifically allows this Court to grant injunctive and declaratory relief if it sees fit.

20. Federal district courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the lawfulness or constitutionality of their detention by DHS; as well as claims by noncitizens seeking to protect their due process rights. *See, Jennings v. Rodriguez*, 138 S. Ct. 830, 840-41 (2018).

21. Mr. Morales' current detention as enforced by Respondents constitutes a "severe restraint [on his] individual liberty," such that he is "in custody in violation of the Constitution or laws … of the United States." *Hensley v. Municipal Court,* 411 U.S. 345, 351 (1973); 28 U.S.C. § 2241(c)(3).

## VENUE

22. Venue is proper in the District of New Jersey. Pursuant to 28 U.S.C. § 2241(d), a writ of habeas corpus may be filed in the district where the Petitioner is held in custody. Under 28 U.S.C. § 1391 (b) (2), a proper venue is where a substantial part of the events and omissions gave rise to the claim.

23. Mr. Morales is currently in ICE custody at Delaney, where a substantial part of the events

6

A30

giving rise to his habeas claim occurred. Due to the custody location and occurrence in events, it is proper to file in the District of New Jersey.

## EXHAUSTION

24. No statutory exhaustion requirements exist as to Mr. Morales' unlawful detention claims. *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000).

25. Although exhaustion is not statutorily required when challenging detention under 28 U.S.C. §2241, many courts still require proof of exhaustion largely to the appropriate agency's benefit. *Id*.

26. There are several exceptions that courts consider when evaluating exhaustion requirements. An immigrant detainee advancing a due process claim is likely to be exempt because the Board of Immigration Appeals ("BIA") does not have jurisdiction to adjudicate a constitutional issue. Mr. Morales is not required to prove exhaustion because he is advancing due process claims in the instant habeas petition.

## STATEMENT OF FACTS

27. Petitioner Freiman Xaviel Hamui Morales ("Mr. Morales") is a native and citizen of Venezuela. He entered the United States without inspection in 2021 and has since pursued immigration relief, including ████ ███████████████ and ██ related protection. Since arriving in the United States, he has worked consistently in the construction industry, established meaningful ties within his community and church, and actively participated in religious and community activities. *Exhibit B; Exhibit C; Exhibit D.*

28. Throughout his time in the United States, Mr. Morales has supported himself through employment, regularly attended church, and volunteered as a cameraman during church services and events. *Exhibit A.*

29. Publicly available records reflect that Mr. Morales was charged in a Florida criminal matter arising from a January 2026 traffic stop. The matter involved non-violent offenses and was resolved through dispositions withholding adjudication, imposing probationary conditions, and assessing fines and costs. The case did not involve allegations of violence, weapons, trafficking, or harm to any individual. *Exhibit G; Exhibit H.*

30. Importantly, the Florida matter did not involve allegations of violence, weapons, assaults, gang activity, threats, domestic violence, trafficking organizations, or physical injury to any individual. Nor did the state court impose any sentence of incarceration. Instead, the publicly available records reflect dispositions withholding adjudication, probationary conditions, and financial penalties. While Respondents may rely upon the existence of those charges, the Constitution requires an individualized determination regarding present dangerousness rather than reliance upon allegations alone.

31. Prior to his detention, Mr. Morales was employed in the construction industry and actively pursuing immigration relief. His ▆▆▆ claim and ▆▆ related protection remain pending, and he intends to continue pursuing all available relief under the immigration laws. *Exhibit F.*

**Mr. Morales' Detention and Proceedings**

32. Mr. Morales is currently detained at Delaney Hall Detention Facility in New Jersey. He was taken into ICE custody on or about March 25, 2026, following a traffic-related encounter involving a suspended driver's license, and remains detained while pursuing immigration relief.

33. Mr. Morales has an upcoming Master Hearing before the Immigration Court scheduled for June 9, 2026. Despite his strong community ties, employment history, active pursuit of immigration relief, and the non-violent nature of his prior criminal matter, he has not been

8

A32

provided any meaningful individualized custody determination regarding whether continued detention is necessary. Respondents continue to detain him without any constitutionally adequate assessment of whether he presents a danger to the community or a risk of flight.

34. In addition to pursuing ███ protection, Petitioner was previously granted ███ ██████ related benefits by United States Citizenship and Immigration Services. The federal government's prior determination that Petitioner qualified for ██████████ and employment authorization further demonstrates that Petitioner has continuously attempted to pursue lawful status through authorized channels rather than evade the immigration process. Petitioner's history reflects compliance with federal immigration procedures, not avoidance of them.

**Mr. Morales' Conditions of Confinement at Delaney Hall**

35. During his detention, Mr. Morales has been subjected to the conditions that have been widely reported at Delaney Hall Detention Facility.

36. Public reports, governmental statements, attorney accounts, and detainee reports have documented concerns relating to food quality, sanitation, overcrowding, limited medical care, communication restrictions, and overall living conditions within the facility.

37. These conditions, combined with the uncertainty and stress associated with prolonged immigration detention, have contributed to the emotional and psychological hardship experienced by Mr. Morales while in custody.

38. Mr. Morales remains in ICE custody at Delaney Hall while actively pursuing ███ relief, ███ related protection, and other available immigration relief through his ongoing immigration proceedings.

**LEGAL FRAMEWORK**

9

A33

**I.** **MR. MORALES IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS THAT HIS DETENTION IS UNLAWFUL & VIOLATES HIS DUE PROCESS RIGHTS.**

39. The Due Process Clause of the Fifth Amendment applies to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001); *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Reno v. Flores*, 507 U.S. 292, 306 (1993); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Individuals navigating the immigration system in pursuit of lawful status are therefore entitled to notice, a meaningful opportunity to be heard, and protection against governmental restraints that deprive them of liberty or property interests. *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). With respect to detention in particular, the Supreme Court has made clear that civil confinement "for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

   **A. Categorical Detention Without Meaningful Process Violates Due Process.**

40. Respondents may attempt to justify Mr. Morales's continued detention through categorical detention frameworks applicable to noncitizens in removal proceedings and by relying upon a Florida criminal matter arising from a January 2026 traffic stop. However, such reliance produces an unconstitutional result where the detainee remains actively engaged in immigration proceedings, continues to pursue ███████ and ███ related protection, and has never received a meaningful individualized custody determination.

41. Since arriving in the United States in 2021, Mr. Morales has worked consistently in the construction industry, established meaningful ties within his community and church, regularly attended religious services, volunteered as a cameraman during church events, and maintained substantial connections within the United States. Despite these longstanding ties, he has never

A34

been afforded a meaningful opportunity to demonstrate that he does not present a danger to the community or a meaningful risk of flight.

42. The Constitution does not permit civil detention to operate through automatic incarceration untethered from individualized process. *Zadvydas*, 533 U.S. at 690; *United States v. Salerno*, 481 U.S. 739, 747 (1987); *Mathews*, 424 U.S. at 335.

43. Federal courts have already recognized the constitutional concerns raised by categorical detention schemes that eliminate individualized custody determinations. See *Maldonado Bautista v. Santacruz, Jr.*, No. 5:25-cv-01873 (C.D. Cal. Feb. 18, 2026). Continued detention without meaningful review cannot be reconciled with the Fifth Amendment, particularly where, as here, the detainee has established significant community ties, regularly participates in church activities, maintains pending claims for immigration relief, and continues to pursue those claims through ongoing immigration proceedings.

44. Moreover, the Florida criminal matter upon which Respondents may rely involved no allegations of violence, weapons, trafficking, or harm to any individual, resulted in no sentence of incarceration, and was resolved through dispositions withholding adjudication and imposing probationary conditions.

45. Nevertheless, Respondents have never provided Mr. Morales with a constitutionally adequate individualized custody determination at which the Government bears the burden of demonstrating that continued detention is necessary.

**B. Mr. Morales' Continued Detention Without an Individualized Custody Determination Violates Procedural Due Process.**

46. When a protected liberty interest is at stake, courts must balance the factors set forth in *Mathews v. Eldridge*, including: (1) the private interest affected; (2) the risk of erroneous deprivation through existing procedures; and (3) the government's interest. 424 U.S. at 335.

47. Mr. Morales's liberty interest is substantial. He fled Venezuela, continues to pursue ███ relief ████████████████ and ███ related protection, and remains detained while his immigration proceedings are ongoing. His confinement also subjects him to the conditions reported at Delaney Hall and impairs his ability to meaningfully participate in the preparation and presentation of his immigration claims.

48. The risk of erroneous deprivation is equally substantial. Despite his longstanding residence in the United States, consistent employment history, strong community and church ties, and active participation in his immigration proceedings, Mr. Morales has never been afforded a meaningful opportunity to demonstrate that continued detention is unnecessary.

49. Although Respondents may rely upon a prior Florida criminal matter, that case involved non-violent offenses, contained no allegations of violence, weapons, trafficking, or harm to any individual, and resulted in no sentence of incarceration. More importantly, Respondents have never provided a constitutionally adequate individualized custody determination at which the Government was required to establish that Mr. Morales presents a danger to the community or a meaningful risk of flight.

50. By contrast, the Government's interests can be fully protected through reasonable conditions of supervision or, at minimum, a prompt and constitutionally adequate individualized custody determination.

A36

51. Under *Mathews*, the balance weighs decisively in Mr. Morales' favor. His continued detention without meaningful individualized review violates procedural due process.

### C. Mr. Morales' Continued Detention Is Arbitrary and Violates Substantive Due Process.

52. Civil immigration detention is constitutionally permissible only where it bears a reasonable relation to a legitimate regulatory purpose. Where detention becomes excessive, arbitrary, or untethered from individualized necessity, it violates substantive due process. *Zadvydas*, 533 U.S. at 690; *Salerno*, 481 U.S. at 747.

53. Mr. Morales remains actively engaged in ongoing immigration proceedings and continues to pursue ███ relief ████████████ and ██ related protection. Since arriving in the United States in 2021, he has worked consistently in the construction industry, established meaningful ties within his community and church, and maintained substantial connections within the United States.

54. Respondents will likely rely heavily upon Petitioner's Florida criminal matter. However, due process requires more than reference to criminal allegations. The relevant inquiry is present dangerousness. Nothing before this Court demonstrates that Petitioner presently poses a threat to any individual or to the community. The Florida matter involved no allegations of violence, weapons, gang activity, assaults, threats, domestic violence, trafficking organizations, or physical injury to any person. Nor did it result in any term of incarceration. The record before this Court instead demonstrates employment, community support, church involvement, and active participation in immigration proceedings. Respondents cannot satisfy their constitutional burden through generalized reliance upon prior allegations alone.

A37

55. The record likewise fails to support continued detention based upon flight risk. Petitioner voluntarily pursued █████ protection, sought ███ related protection, secured employment, established community ties, retained counsel, and continues to litigate his immigration case. Most significantly, Petitioner presently has a scheduled Master Calendar Hearing before the Immigration Court. Individuals intending to abscond do not ordinarily pursue multiple forms of immigration relief while actively participating in removal proceedings. Petitioner's conduct demonstrates compliance with the immigration process rather than avoidance of it.

56. Nevertheless, Respondents have never provided an individualized custody determination establishing that Mr. Morales presently poses a danger to the community or a meaningful risk of flight, nor have they demonstrated that continued detention is necessary to serve any legitimate governmental objective.

57. Under these circumstances, continued detention bears no reasonable relation to a legitimate regulatory purpose. Instead, Mr. Morales remains confined without any meaningful assessment of whether detention is actually necessary, despite his ongoing pursuit of immigration relief and substantial ties to the community.

58. At bottom, this case concerns whether the Government may continue imprisoning a twenty-three-year-old █████ seeker who has actively pursued lawful status, previously received ██████████████████ from the federal government, maintained employment, established substantial community ties, and remained engaged in immigration proceedings without first demonstrating through a meaningful individualized process that continued detention remains necessary. The Fifth Amendment requires more than assumptions, labels, or generalized concerns. It requires evidence. Respondents have not provided it.

**CLAIMS FOR RELIEF**

14

A38

**COUNT ONE**

**VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION (SUBSTANTIVE DUE PROCESS)**

59. Petitioner re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

60. Respondents have never established through an individualized process that Mr. Morales poses a present danger to the community or a meaningful risk of flight.

61. Mr. Morales remains actively engaged in ongoing immigration proceedings and continues to pursue immigration relief, including ████ ██████████████████ and ██ related protection. He has substantial ties to the United States, including consistent employment in the construction industry, active participation in his church community, and ongoing involvement in religious and community activities.

62. Although Respondents may rely upon a Florida criminal matter arising from a January 2026 traffic stop, that case involved non-violent offenses, contained no allegations of violence, weapons, trafficking, or harm to any individual, and resulted in no sentence of incarceration.

63. Civil immigration detention must bear a reasonable relation to a legitimate regulatory purpose and cannot become punitive in nature. Zadvydas v. Davis, 533 U.S. 678, 690-91 (2001). Nevertheless, Respondents have never been required to establish, through a constitutionally adequate individualized process, that Mr. Morales presently poses a danger to the community or a meaningful risk of flight.

64. Mr. Morales's continued detention deprives him of his liberty, interferes with his ability to meaningfully pursue his immigration claims, and subjects him to the conditions of confinement at Delaney Hall.

15

A39

65. Because Respondents have continued to detain Mr. Morales without demonstrating that detention remains necessary to serve a legitimate governmental purpose, his confinement has become excessive, arbitrary, and punitive in violation of the Due Process Clause of the Fifth Amendment.

## COUNT TWO

### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION (PROCEDURAL DUE PROCESS)

66. Petitioner re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

67. The Fifth Amendment protects all persons from deprivation of liberty without due process of law.

68. Mr. Morales possesses a substantial liberty interest in freedom from civil detention and in meaningfully pursuing his pending immigration relief, including ███ █████████ ███████ and ████ related protection.

69. Despite that protected liberty interest, Respondents continue to detain Mr. Morales without providing a meaningful opportunity to challenge the necessity of his detention through a constitutionally adequate individualized custody determination.

70. The risk of erroneous deprivation is substantial. Mr. Morales has never been afforded a meaningful opportunity to demonstrate that continued detention is unnecessary despite his longstanding residence in the United States, consistent employment history, strong community and church ties, active participation in religious activities, and ongoing pursuit of immigration relief. Moreover, although Respondents may rely upon a Florida criminal matter, that case

16

A40

involved non-violent offenses, contained no allegations of violence, weapons, trafficking, or harm to any individual, and resulted in no sentence of incarceration.

71. Continued detention interferes with Mr. Morales's ability to pursue his pending immigration relief while simultaneously subjecting him to the hardships of prolonged detention and the conditions of confinement at Delaney Hall.

72. Because Respondents continue to detain Mr. Morales without constitutionally adequate procedures to determine whether detention remains necessary, there exists a substantial risk that he is being deprived of liberty without sufficient justification, in violation of the Due Process Clause of the Fifth Amendment.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Petitioner respectfully requests that this Court:

1. Assume jurisdiction over this action pursuant to 28 U.S.C. § 2241 and the United States Constitution;

2. Issue a Writ of Habeas Corpus ordering Mr. Morales' **immediate release** from Respondents' custody on the ground that his continued detention violates the Due Process Clause of the Fifth Amendment;

3. In the alternative, order Respondents to **immediately release Mr. Morales under reasonable conditions of supervision**;

4. In the alternative, order a prompt and constitutionally adequate individualized custody determination before an Immigration Judge;

5. Order that any custody hearing place the burden on the Government to establish, by clear and convincing evidence, that Mr. Morales continued detention is necessary because he poses a present danger to the community or a meaningful risk of flight;

17

A41

6.  Retain jurisdiction to review any custody determination to ensure compliance with this Court's Order and constitutional due process requirements;

7.  Enter injunctive relief prohibiting Respondents from transferring Mr. Morales out of this District during the pendency of this action, particularly because such a transfer would interfere with his ability to communicate with counsel and meaningfully participate in his ongoing immigration proceedings;

8.  Enter injunctive relief prohibiting Respondents from re-arresting or re-detaining Mr. Morales absent lawful authority and constitutionally adequate process;

9.  Grant such other and further relief as this Court deems just and proper.

Dated: 06/03/2026                                    Respectfully Submitted,

*Alexandra Minogue*

Alexandra Minogue, Esq.
NJ Bar ID: 479582024
Nova Law Group
21 Fulton Street
Newark, NJ 07102
E: aminogue@nova.law
P: 844-844-6682
*Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I, undersigned counsel, hereby certify that on this date, I filed this Motion for Temporary Restraining Order and Injunctive Relief and Petition for Writ of Habeas Corpus with all attachments using the PACER system.

Dated: 06/03/2026                                    Respectfully Submitted,

*Alexandra Minogue*

18

A42

_____
Alexandra Minogue, Esq.
NJ Bar ID: 479582024
Nova Law Group
21 Fulton Street
Newark, NJ 07102
E: aminogue@nova.law
P: 844-844-6682
*Counsel for Petitioner*

A43



**U.S. Department of Justice**

United States Attorney
District of New Jersey
*Civil Division*

---

ROBERT FRAZER
UNITED STATES ATTORNEY

*David Inkeles*
*Assistant United States Attorney*
*Acting Deputy Chief, Civil Division*

*970 Broad Street, Suite 700*      *main:  (973) 645-2700*
*Newark, NJ 07102*                 *direct: (973) 645-2813*
*david.inkeles@usdoj.gov*

June 4, 2026

**BY ECF**
Honorable Zahid N. Quraishi, U.S.D.J.
U.S. District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

> **Re:**    ***Morales v. Soto, et al.,*** **No. 26-6414 (ZNQ)**
> **Settlement in Principle**

Dear Judge Quraishi:

This Office represents Respondents in this habeas matter. We respectfully write on behalf of all parties to notify the Court that the parties have reached a settlement in principle to resolve this matter without the need for litigation.[1] Based on this development, the parties respectfully propose that the hearing is moot and respectfully request that the Court cancel the hearing to preserve the Court's and the parties' resources. We thank the Court for its attention to this matter.

> Respectfully submitted,
>
> ROBERT FRAZER
> United States Attorney
>
> JOHN F. BASIAK JR.
> Assistant United States Attorney
> Chief, Civil Division
>
> By:   *s/ David Inkeles*
> DAVID INKELES
> Acting Deputy Chief, Civil Division
> TASHA BRADT

---

[1] The parties anticipate submitting a joint stipulation of dismissal in the near future.

A44

Deputy Chief, Civil Division
BROOKS E. DOYNE
Assistant United States Attorneys
*Attorneys for Respondents*

cc:     Counsel of Record (ECF)

2

A45



**U.S. Department of Justice**

United States Attorney
District of New Jersey
*Civil Division*

---

ROBERT FRAZER
UNITED STATES ATTORNEY

*David Inkeles*
*Assistant United States Attorney*
*Acting Deputy Chief, Civil Division*

*970 Broad Street, Suite 700*       *main: (973) 645-2700*
*Newark, NJ 07102*                   *direct: (973) 645-2813*
*david.inkeles@usdoj.gov*

June 4, 2026

**<u>BY ECF</u>**
Honorable Zahid N. Quraishi, U.S.D.J.
U.S. District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

> **Re:** ***Morales v. Soto, et al.,* No. 26-6414 (ZNQ)**
> **Settlement in Principle**

Dear Judge Quraishi:

This Office represents Respondents in this habeas matter. We respectfully write on behalf of all parties to notify the Court that the parties have reached a settlement in principle to resolve this matter without the need for litigation.[1] Based on this development, the parties respectfully propose that the hearing is moot and respectfully request that the Court cancel the hearing to preserve the Court's and the parties' resources. We thank the Court for its attention to this matter.

Respectfully submitted,

ROBERT FRAZER
United States Attorney

JOHN F. BASIAK JR.
Assistant United States Attorney
Chief, Civil Division

By:     *s/ David Inkeles*
DAVID INKELES
Acting Deputy Chief, Civil Division
TASHA BRADT

---

[1] The parties anticipate submitting a joint stipulation of dismissal in the near future.

A46

Deputy Chief, Civil Division
BROOKS E. DOYNE
Assistant United States Attorneys
*Attorneys for Respondents*

cc:    Counsel of Record (ECF)

The Court notes for the record that Respondents' request for additional time did not identify settlement efforts as a basis for the extension, nor was it granted on that basis.

The parties' response notwithstanding, the hearing on Monday will PROCEED AS SCHEDULED before the undersigned because the parties have failed to show cause why it should not go forward as required by the Order to Show Cause and the deadline to do so has elapsed.

By 10:00 a.m. tomorrow, Respondents will identify the names and titles of witnesses that will be attending the hearing.

So Ordered this 4th day of June 2026.

_____
ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE

2

A47



June 4, 2026

Alexandra Minogue, Esq.
Nova Law Group
21 Fulton St.
Newark, NJ 07102
T: 844-444-6682

**<u>VIA PACER</u>**
The Honorable Zahid N. Quraishi, U.S.D.J.
Clarkson S. Fisher Federal Building
& United States Courthouse
402 East State Street
Trenton, NJ 08608

> **RE: *Morales v. Soto, et al.***
> **Docket No.: 3:26-cv-6414 (ZNQ)**

Dear Honorable Zahid N. Quraishi, U.S.D.J.

The undersigned respectfully writes regarding Respondent's earlier submission advising the Court of a settlement in principle. Yesterday, the undersigned became aware of criminal case records relating to Petitioner's prior Florida matter and promptly reviewed the available documents. Following discussions with Petitioner through his family member this morning, Petitioner expressed a desire to resolve this matter. Central to those discussions was Petitioner's strong desire to leave Delaney Hall.

As this Court is aware, Delaney Hall has become the subject of significant public scrutiny, ongoing litigation, governmental investigation, and repeated allegations concerning conditions of confinement. Petitioner has repeatedly expressed distress regarding his continued confinement there. Faced with the prospect of remaining at Delaney Hall while litigation continued, Petitioner advised counsel that he wished to pursue a negotiated resolution. Based upon those communications, the undersigned reasonably understood that Petitioner wished to proceed toward settlement and therefore consented to the filing advising the Court that the parties had reached a settlement in principle.

The undersigned also wishes to place on the record her sincere appreciation for the professionalism,

1

A48

courtesy, and diligence demonstrated by the United States Attorney's Office throughout these proceedings. In particular, Assistant United States Attorney Brooks E. Doyne has been exceptionally responsive, cooperative, and professional. Government counsel acted in complete good faith at all times, and the present circumstances should not be attributed to any conduct by Respondents or their counsel.

Shortly after the filing was submitted, however, the undersigned conducted a subsequent call with Petitioner. During that conversation, Petitioner advised that he had reconsidered his position and no longer wished to proceed with the proposed resolution. Instead, he expressed his desire to continue litigating this matter and pursuing the relief sought in his Petition. Accordingly, Petitioner withdrew his consent before any final agreement could be executed.

The undersigned recognizes that the Court has devoted substantial time and resources to this matter and regrets any inconvenience caused by these developments. The undersigned respectfully thanks the Court for its continued attention to this case.

Respectfully,

Alexandra Minogue, Esq.
NJ Bar ID: 479582024
Nova Law Group
21 Fulton Street
Newark, NJ 07102
E: aminogue@nova.law
P: 844-844-6682
*Counsel for Petitioner*

CC: Brooks Doyne, Esq.
    *Counsel for Respondents*

2

A49



**U.S. Department of Justice**

United States Attorney
District of New Jersey

_____

*Robert Frazer*  *970 Broad Street, 7th Floor*  main: *(973) 645-2700*
*United States Attorney*  *Newark, NJ 07102*

June 5, 2026

<u>**Via ECF**</u>
Honorable Zahid N. Quraishi, U.S.D.J.
United States District Court
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

   **Re: *Humai Morales v. Soto*, No. 26-06414**
     **Notice of Transfer and Request to Cancel Hearing**

Dear Judge Quraishi:

  At approximately 11:00 p.m. last night, U.S. Immigration and Customs Enforcement transferred Petitioner Freiman Xaviel Humai Morales from Delaney Hall to the Elizabeth Contract Detention Facility in New Jersey. Although that transfer does not moot the petitioner's demand for either release or, alternatively, a bond hearing before an immigration judge, ECF No. 8, the transfer moots any need to conduct the evidentiary hearing the Court scheduled for Monday afternoon.

  The Court ordered the evidentiary hearing because the petitioner's allegations regarding conditions at Delaney Hall amounted to a claim that "his detention was arbitrary and capricious based on these conditions." ECF No. 5 at 1. The Court acknowledged that a "claim based on conditions of confinement may only form a basis for relief in a habeas proceeding in an extreme case." *Id.* The Court then explained that the petitioner had "alleged facts which this Court believes places this matter in such a position" and that an evidentiary hearing was necessary because "the issue cannot be resolved solely through certifications which do not permit credibility determinations." *Id.* at 1–2.

  Because the petitioner is no longer subject to the alleged conditions that required an evidentiary hearing, there is no basis for that hearing to proceed. It is moot. Accordingly, I respectfully request that the Court cancel the hearing. I also respectfully request that the Court rescind its order requiring the respondents to identify witnesses who would testify on the respondents' behalf in that hearing. I make those requests mindful that *Washington v. The GEO Group*, No. 26-06466 (JKS)—a civil suit against the contractor that owns and runs Delaney Hall—involves similar allegations regarding conditions of confinement at that facility. As a general matter civil suits, not habeas petitions, are the more appropriate and traditional

A50

means for litigating conditions of confinement. *See Hope v. Warden York Cnty. Prison,* 972 F.3d 310, 323 (3d Cir. 2020) (discussing traditional boundaries of habeas). Furthermore, the pendency of that civil suit may alleviate concerns about alleged harms being capable of repetition, yet evading review.

I greatly appreciate the Court's consideration.

Respectfully submitted,

By:  *Robert Frazer*
       ROBERT FRAZER
       United States Attorney

cc:    All counsel of record (via ECF)

2

A51

**U.S. Department of Justice**

United States Attorney
District of New Jersey

_____

*Robert Frazer*          *970 Broad Street, 7th Floor*      main: (973) 645-2700
*United States Attorney*      *Newark, NJ 07102*

June 5, 2026

**Via ECF**
Honorable Zahid N. Quraishi, U.S.D.J.
United States District Court
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

> **Re:** *Humai Morales v. Soto*, **No. 26-06414**

I write in response to the Court's 10:18 a.m. text order.

First, the Department of Justice has authorized my Office to file a mandamus petition challenging the Court's authority to proceed with Monday's hearing. My Office will file that mandamus petition no later than 9:00 a.m. Monday morning. And my Office will ask the Court of Appeals to resolve the petition as expeditiously as possible.

Second, I respectfully request that the Court stay commencement of the scheduled hearing pending disposition of the mandamus petition.

Third and finally, if the hearing goes forward as scheduled or on a later date, Respondents intend to call the following witnesses:

- Alberto Mendoza, Supervisory Detention and Deportation Officer

- Alexandra Minogue, Esq., Counsel for Petitioner, given the declaration she submitted providing opinions premised on her "professional judgment" and "professional experience" regarding the alleged conditions at the Delaney Hall Detention Facility (ECF No. 1-1, Declaration of Counsel Alexandra Minogue, ¶¶ 11, 13)

- Petitioner Freiman Xaviel Hamui Morales

A52

I greatly appreciate the Court's consideration.

Respectfully submitted,

/s/ Robert Frazer

ROBERT FRAZER
United States Attorney

cc:     All counsel of record (via ECF)

A53



**U.S. Department of Justice**

United States Attorney
District of New Jersey

---

*Robert Frazer*
*United States Attorney*

*970 Broad Street, 7ᵗʰ Floor*
*Newark, NJ 07102*

*main: (973) 645-2700*

June 5, 2026

**Via ECF**
Honorable Zahid N. Quraishi, U.S.D.J.
United States District Court
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

> **Re:** *Humai Morales v. Soto*, **No. 26-06414**

I write in response to the Court's 10:18 a.m. text order.

First, the Department of Justice has authorized my Office to file a mandamus petition challenging the Court's authority to proceed with Monday's hearing. My Office will file that mandamus petition no later than 9:00 a.m. Monday morning. And my Office will ask the Court of Appeals to resolve the petition as expeditiously as possible.

Second, I respectfully request that the Court stay commencement of the scheduled hearing pending disposition of the mandamus petition.

Third and finally, if the hearing goes forward as scheduled or on a later date, Respondents intend to call the following witnesses:

- Alberto Mendoza, Supervisory Detention and Deportation Officer

- Alexandra Minogue, Esq., Counsel for Petitioner, given the declaration she submitted providing opinions premised on her "professional judgment" and "professional experience" regarding the alleged conditions at the Delaney Hall Detention Facility (ECF No. 1-1, Declaration of Counsel Alexandra Minogue, ¶¶ 11, 13)

- Petitioner Freiman Xaviel Hamui Morales

I greatly appreciate the Court's consideration.

Respectfully submitted,

/s/ Robert Frazer

ROBERT FRAZER
United States Attorney

cc:     All counsel of record (via ECF)

A stay request pending a mandamus petition requires the Court to consider:

(1) whether Respondents are sufficiently likely to obtain mandamus relief;

(2) whether Respondents would suffer irreparable injury absent a stay;

(3) whether a stay would substantially injure Petitioner; and

(4) where the public interest lies. *See In re Citizens Bank, N.A.,* 15 F.4th 607, 615 (3rd Cir. 2021); *Defense Distributed v. Platkin,* Civ. No. 21-9867, 2023 WL 3996346, at *4 n.8 (D.N.J. June 14, 2023). Respondents' informal request has not made the requisite showing. Accordingly, the request is hereby DENIED.

Nothing in this Order precludes Respondents from seeking relief from the Court of Appeals under FRAP 8(a)(2). Absent a stay by the Court of Appeals, the hearing on Monday will proceed as scheduled.

So Ordered this 5th day of June 2026.

_____
ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE